**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROY ALLEN PACHECO,

Defendant-Appellant.

No. 97-2311

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-96-663-MV)

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for Appellant.

Samuel L. Winder, Assistant United States Attorney, Albuquerque, New Mexico, (John J. Kelly, United States Attorney, with him on the brief), for Appellee.

Before **MURPHY, HOLLOWAY,** and **MAGILL**[*]**,** Circuit Judges.

**MURPHY**, Circuit Judge.

---

[*]The Honorable Frank J. Magill, from the Eighth Circuit Court of Appeals, sitting by designation.

Defendant Roy Allen Pacheco was indicted on two counts of aggravated sexual abuse of a child while in Indian Country in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(A), 2246(2)(C).[1] After a jury trial, Pacheco was found guilty of the digital penetration count and was acquitted of the penile penetration count. Pacheco appeals, arguing the district court erred by refusing to give a child witness instruction and by admitting certain testimony of two physicians. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.

## I. BACKGROUND

The evidence at trial established that Jane Doe was sexually abused when she was five years old. Jane Doe is the daughter of Pacheco's former girlfriend, Lurleen Enjady. Ms. Enjady had a severe alcohol problem and in early 1996 essentially abandoned Jane Doe and her sister at the Pacheco residence[2] where Pacheco lived with his parents and where the abuse allegedly occurred.

Cynthia Begay, a social worker, testified that on March 6, 1996, she removed Jane Doe and her younger sister from the Pacheco home. On March 8,

---

[1]The abuse allegedly occurred at a residence located on the Santo Domingo Pueblo Indian Reservation. Pacheco is a member of the Santo Domingo Pueblo tribe and the victim is a member of the Mescalero Apache Indian tribe.

[2]It is not clear from the testimony at trial exactly when Lurleen Enjady dropped off her children at the Pacheco residence. It is also unclear how long the children stayed at the Pacheco residence during 1996. Ms. Enjady apparently could not be located at the time of trial and did not testify.

Jane Doe's aunt took her to the Mescalero Indian Service Hospital where Dr. Verlyn Corbett examined her.

Dr. Corbett testified that he had previously examined Jane Doe in December 1994 for signs of physical and sexual abuse. He stated that Jane Doe told him she had been hit in the front of her body and had been spanked on the back side of her body. Dr. Corbett further testified that Jane Doe identified "Roy" as the person who hit her. Dr. Corbett did not observe any evidence of physical trauma to Jane Doe at the time of his examination. Dr. Corbett testified that when he examined Jane Doe in March 1996, she again told him that she had been hit on the front side of her body and that she had been spanked on her back side. Although Dr. Corbett did not observe any evidence of physical abuse, the sexual abuse examination revealed an abnormality in the appearance of her hymen. Consequently, Dr. Corbett initiated a consultation with Dr. Renee Ornelas for a more comprehensive sexual exam.

Dr. Ornelas, who was the director of a program that provides medical evaluations of suspected sexual abuse victims, examined Jane Doe on April 8, 1996. A pelvic examination revealed a defect or loss of tissue to the hymen, which Dr. Ornelas concluded was the result of sexual abuse due to vaginal penetration. Dr. Ornelas testified that she was "concerned about [Jane Doe's] safety" and told her that she knew "somebody hurt [her]." As Jane Doe was

getting dressed, she said, "Hands."  Dr. Ornelas asked, "Whose hands?"  Jane Doe replied, "Roy."

Jane Doe, who was six years old at the time of trial, also testified.  She stated that "Roy" "hurt" her "with his hands" while she was staying at the Pacheco residence.  When asked where he touched her, she pointed to the area between the legs of an anatomically correct doll.

The jury returned a guilty verdict on the digital penetration count and a not-guilty verdict on the penile penetration count.  Pacheco was sentenced to 108 months in prison.  He asserts two arguments on appeal: (1) the district court erred by refusing to give a child witness instruction and (2) the district court erred by admitting certain testimony of Drs. Corbett and Ornelas.

## II.  DISCUSSION

### A.    Jury Instructions

Pacheco argues the district court erred by refusing to give a special jury instruction regarding the credibility of Jane Doe, the child victim/witness.  This court reviews the district court's refusal to give the tendered instruction for abuse of discretion.  *See Vining v. Enterprise Fin. Group, Inc.*, Nos. 96-6254, -6267, -6082, 1998 WL 416869, at * 7 (10th Cir. July 22, 1998).  We examine the jury instructions as a whole to determine whether the instructions "adequately stated the governing law and provided the jury with an accurate understanding of the

issues and standards applicable." *United States v. Grey*, 56 F.3d 1219, 1222 (10th Cir. 1995). The question of whether a jury was properly instructed is a question of law which is reviewed de novo. *See Vining*, 1998 WL 416869, at *7.

Pacheco requested that the following child witness instruction be submitted to the jury:

> You have heard the testimony of Jane Doe, and you may be wondering whether her young age should make any difference. What you must determine, as with any witness, is whether that testimony is believable. Did she understand the questions? Does she have a good memory? Is she telling the truth?
>
> Because young children may not fully understand what is happening here, it is up to you to decide whether Jane Doe understood the seriousness of her appearance as a witness at this criminal trial. In addition, young children may be influenced by the way that questions are asked. It is up to you to decide whether Jane Doe understood the questions asked of her. Keep this in mind when you consider Jane Doe's testimony.

The district court refused to give the proposed instruction and instead gave the following general witness credibility instruction:

> You are the sole judges of the credibility or believability of each witness and the weight to be given to that witness'[s] testimony.
>
> An important part of your job will be making judgments about the testimony of all of the witnesses who testified in this case, including the child witness. You should decide whether you believe what each person had to say, and how important that testimony was. In making that decision, I suggest you ask yourselves a few questions.
>
> Did the person impress you as honest? Did the witness have a personal interest in the outcome of the case? Did the witness have any particular reason not to tell the truth? Did the witness have any relationship with either the Government or the Defense? Did the witness seem to have a good memory? Did the witness have the

opportunity and ability to understand the questions clearly and answer them directly?  Did the witness'[s] testimony differ from the testimony of other witnesses?

These are a few of the considerations that will help you determine the accuracy of what each witness said.

In rejecting Pacheco's proposed child witness instruction, the district court noted that "most of it is identical to the general [witness credibility] instruction." According to the district court, the only significant difference between the proposed instruction and the general credibility instruction was that the proposed instruction added "a concept that young children may not fully understand what is happening."  Although the district court noted this was a "legitimate issue," the court nonetheless concluded it could not give the proffered instruction because it was "not one which [it had] the authority to instruct the jury."

Pacheco argues the district court erroneously concluded that it did not have authority to give the proposed child witness instruction.  In *Guam v. McGravey*, 14 F.3d 1344 (9th Cir. 1994), the Ninth Circuit concluded that whether to give a child witness instruction in a particular case should be entrusted to the sound discretion of the district court.  *See id.* at 1348-49 (rejecting defendant's argument that child witness instruction must be given whenever child testifies in sexual abuse case and holding district court did not abuse its discretion by refusing to give instruction).  We agree with the reasoning in *McGravey* and conclude that a district court has the discretion to determine in a particular case whether the jury

should be specially instructed regarding the credibility of a child witness and, if so, the nature of that instruction. *See id.*; *see also Grey*, 56 F.3d at 1222 (noting district court "'has substantial discretion in formulating [jury] instructions, so long as they are correct statements of the law and adequately cover the issue presented'" (quoting *United States v. Vasquez*, 985 F.2d 491, 496 (10th Cir. 1993))).

Although the district court erroneously concluded it did not have authority to give a proposed child witness instruction,[3] this does not end our inquiry. We must determine whether the jury instructions as a whole "sufficiently cover[ed] the issues." *Vining*, 1998 WL 416869, at * 7.

Contrary to Pacheco's contentions, the general witness credibility instruction provided the jury with adequate guidance in evaluating Jane Doe's testimony. The instruction emphasized that it was the jury's responsibility to carefully scrutinize the credibility of all the witnesses. Indeed, in directing the jury to judge the credibility of the witnesses, the instruction specifically referred to the "child witness." As the district court recognized, the general credibility instruction directly addressed the majority of concerns expressed in the proposed child witness instruction. We therefore conclude the jury instructions as a whole

---

[3]We express no opinion on the specific content of the child witness instruction offered in this case.

adequately conveyed the governing law and sufficiently apprised the jury of the pertinent issues. *Cf. McGravey*, 14 F.3d at 1349 ("The proffered child witness instruction would have added nothing to the jury's ability to understand and . . . evaluate the credibility of the child . . . ."). Accordingly, we reject Pacheco's claim of error based on the jury instructions.[4]

B.      **Physician Testimony**

Pacheco argues the district court erred by admitting the testimony of two physicians, Drs. Corbett and Ornelas, regarding Jane Doe's statements about the alleged incident of abuse and the identity of the alleged abuser. Pacheco claims the testimony was inadmissible hearsay. Because Pacheco did not object at trial to the testimony of the physicians, we review the district court's admission of the testimony for plain error. *See United States v. Martinez*, 76 F.3d 1145, 1150 (10th Cir. 1996) (stating that in absence of timely objection, evidentiary rulings are reviewed only for plain error).

---

[4]This court notes that because the child victim testified in this case, defense counsel had the opportunity to cross-examine her at length regarding her ability to appreciate the difference between the truth and a lie; whether her testimony was influenced by adults such as the prosecutor and the investigator; and whether she understood why she was in court testifying. In addition, defense counsel had the opportunity during closing arguments to question these aspects of the child's testimony. *Cf. Guam v. McGravey*, 14 F.3d 1344, 1349 (9th Cir. 1994) (suggesting that "time-honored methods of educating a jury on issues of credibility," such as cross-examination and argument, may be more effective than child witness instruction).

As discussed above, Dr. Corbett testified that he had examined Jane Doe in December 1994 and that during the examination she identified "Roy" as the person who hit her on the front side of her body and spanked her on the back side. Dr. Ornelas testified that after her examination of Jane Doe in March 1996, Jane Doe told her "Roy" had hurt her with his "hands."

The government contends the physicians' statements are admissible under Rule 803(4) of the Federal Rules of Evidence, which provides that the following statements are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4). The rationale behind the Rule 803(4) exception is that because a patient's medical care depends on the accuracy of the information she provides, the patient has a selfish motive to be truthful; consequently, a patient's statements to her physician are likely to be particularly reliable. *See United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995); *United States v. Joe*, 8 F.3d 1488, 1493-94 (10th Cir. 1993); *see also* Fed. R. Evid. 803(4) advisory committee's note.

Pacheco asserts this rationale is suspect in cases involving young children because they may not understand the importance of telling the truth when meeting

with a doctor and because parents almost always initiate the medical consultation. Pacheco contends that in this case, no evidence was presented showing that Jane Doe understood she was speaking with a doctor when she met with Drs. Corbett and Ornelas. Further, according to Pacheco, there was no evidence that anyone advised Jane Doe of the special need for truthfulness. Pacheco argues that because the trustworthiness guarantee underlying Rule 803(4) was absent in this case, the rule cannot serve as a proper basis for admission of the physicians' testimony.

We have already rejected this argument. In *United States v. Norman T.*, 129 F.3d 1099 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1322 (1998), the defendant, who was convicted of child sexual abuse, argued that the child victim's statements regarding the alleged abuse to her physician should not be admissible under Rule 803(4) "because the victim did not understand the nature of her relationship with the medical personnel, thereby undermining the likelihood of credibility upon which the exception is based."[5] *Id.* at 1105. In rejecting the defendant's argument, the court noted that the defendant had cited no authoritative law supporting his contention. *See id.* To the contrary, the court

---

[5]The defendant in *Norman T.* had made a timely objection to the admission of the physician's testimony. *See United States v. Norman T.*, 129 F.3d 1099, 1105 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1322 (1998). The court therefore reviewed the district court's evidentiary ruling for abuse of discretion. *See id.*

-10-

concluded that case law from the Supreme Court and this circuit suggested otherwise. *See id.* (citing *White v. Illinois*, 502 U.S. 346, 356 (1992) and *United States v. Tome*, 61 F.3d 1446, 1449-51 (10th Cir. 1995)). The court therefore declined to create a presumption that Rule 803(4) is inapplicable to a child's statements to her physician. *See id.* The court also noted that the defendant had failed to point to any actual evidence to show the victim did not understand she was seeking medical treatment. *See id.* Finally, the court noted that the victim had testified at trial and was subject to cross-examination, thereby "ensur[ing] the fairness and integrity of the proceedings." *Id.* at 1106. The court therefore concluded the district court did not abuse its discretion in admitting the physician's testimony pursuant to Rule 803(4).

As in *Norman T.*, Pacheco has not pointed to any actual evidence indicating that Jane Doe did not understand she was being examined by doctors and needed to be truthful in her discussions with them. In fact, Dr. Ornelas testified that when she meets with a child who is being examined for sexual abuse, she interviews the child upfront and explains "why they are there." After the interview but before the actual medical exam, either she or the nurse shows the

child around the exam room, explains what the medical instruments are, and discusses the procedure.[6]

Moreover, the child victim testified in this case and was subject to cross-examination. Defense counsel therefore had the opportunity to question Jane Doe regarding the circumstances surrounding her statements to the physicians. This court therefore rejects Pacheco's argument that because there was no evidence showing Jane Doe appreciated the necessity for truthfulness when speaking with Drs. Corbett and Ornelas, the physicians' testimony was not admissible under Rule 803(4). *See id.* at 1105-06 (concluding district court acted within its discretion in admitting physician testimony); *see also Joe*, 8 F.3d at 1494 n.5 (rejecting rule requiring inquiry into patient's motive for making statements in determining admissibility of statements under Rule 803(4) and stating that "the rule itself has built-in guarantees that assure the trustworthiness of a statement made for purposes of medical diagnosis or treatment"); *United States v. George*, 960 F.2d 97, 100 (9th Cir. 1992) (noting that in determining admissibility of child's statements under Rule 803(4), "the age of the child and her other personal characteristics go to the weight of the hearsay statements rather than their admissibility").

---

[6]In this case, Jane Doe told Dr. Ornelas about the abuse after the medical examination was complete.

Pacheco also argues the district court erred by admitting the portion of the physicians' statements identifying him as the alleged abuser. Both Dr. Corbett and Dr. Ornelas testified Jane Doe told them during their examinations that "Roy" was the individual who had hurt her. Pacheco acknowledges circuit precedent holding that a child's statement to a physician identifying the person who caused the injuries is admissible under Rule 803(4) if the alleged abuser was a member of the victim's family or household. *See Tome*, 61 F.3d at 1450 (concluding child victim's statements to her doctors identifying her father as her abuser were admissible under Rule 803(4)); *Joe*, 8 F.3d at 1495 (stating that in domestic sexual abuse cases, "[t]he physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household"). Pacheco summarily asserts, however, that he was not a member of Jane Doe's family or household, and therefore Jane Doe's identification of him as the abuser was inadmissible.

This court rejects Pacheco's narrow reading of the term "household." Although Pacheco was not Jane Doe's natural father, he had an intermittent relationship with her mother. Though exact dates were never firmly established, the evidence at trial showed that Jane Doe often stayed at the Pacheco residence and was living with Pacheco and his parents when the abuse occurred. Cynthia

-13-

Begay, a social worker, testified that she removed Jane Doe and her younger sister from the Pacheco residence on March 6, 1996. Irma Pacheco, Pacheco's mother, testified that Jane Doe and her mother spent approximately four months each year at the Pacheco residence. She further testified that Jane Doe stayed at her house for a few weeks during January and February 1996. Pacheco's father Matthew also testified that Jane Doe occasionally stayed at the Pacheco residence. Pacheco's sister Noreen, who lived with her parents, testified that Jane Doe stayed at their house during March 1996. Finally, Pacheco himself testified that Jane Doe and her mother stayed at the Pacheco residence approximately four months each year and that Jane Doe stayed there during January and March 1996.

Contrary to Pacheco's contentions, the evidence presented at trial established that Jane Doe was a member of Pacheco's household. That Jane Doe may not have spent each and every day at the Pacheco residence is irrelevant. What is relevant is that Jane Doe's relationship with Pacheco was such that his identity as her abuser was reasonably pertinent to her course of treatment. *Cf. Joe*, 8 F.3d at 1495 (holding woman's statement to her physician that her husband, from whom she was separated, raped her was admissible and stating that "abuser's identity is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes

'reasonably pertinent' to the victim's proper treatment"). Drs. Corbett and Ornelas testified that they questioned Jane Doe regarding the incidents of abuse and the identification of her abuser for the purpose of aiding in their diagnosis and treatment. Therefore, under the reasoning set forth in *Tome* and *Joe*, the district court did not err in admitting Jane Doe's statements to Drs. Corbett and Ornelas identifying Pacheco as her abuser. *See Tome*, 61 F.3d at 1449-50; *Joe*, 8 F.3d at 1493-95.

This court therefore rejects Pacheco's claim of error based on the district court's admission of the physicians' testimony of Jane Doe's statements concerning the incidents of abuse and her identification of Pacheco as the person who abused her.

### III. CONCLUSION

For the reasons discussed above, the judgment of the United States District Court for the District of New Mexico is **AFFIRMED**.