**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                      Elisabeth A. Shumaker
      Clerk                                                                                      Chief Deputy Clerk

November 24, 1998


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   98-1022, *United States v. Gonzalez-Montoya*
          Filed on November 23, 1998


        The court's slip opinion filed on November 23, 1998, contains a clerical error
on the cover page.  Please replace your copy of page one of the opinion with the
attached corrected page.

                                        Sincerely,
                                        Patrick Fisher, Clerk of Court


                                        By:    Keith Nelson
                                               Deputy Clerk




encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

No. 98-1022

VICTOR HUGO GONZALEZ-
MONTOYA,

     Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 97-CR-208-N)

---

Stephen M. Wheeler, Stephen M. Wheeler, P.C., Evergreen, Colorado, for
Defendant-Appellant.

John M. Hutchins, Assistant United States Attorney (Henry L. Solano, United
States Attorney, and James R. Boma, Assistant United States Attorney, with him
on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before TACHA, BRORBY, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

     Defendant-Appellant Victor Hugo Gonzalez-Montoya appeals from his

sentence for conspiracy to distribute and distribution of methamphetamine in

violation of 21 U.S.C. §§841(a)(1) and 846. He contends that (1) insufficient

evidence supported the admission of hearsay statements by an alleged co-conspirator; (2) the district court improperly denied his motion for mistrial after it was discovered that the government had withheld material impeachment evidence in violation of the disclosure requirements of Giglio v. United States, 405 U.S. 150 (1972); (3) the government's misstatement of the deliberate ignorance jury instruction during its closing argument and the court's decision not to give a curative instruction constituted reversible error; and (4) the district court should have granted him a sentence reduction under the "safety valve" provision of the sentencing guidelines, 18 U.S.C. § 3553(f). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(c), and we affirm.

Background

Mr. Gonzalez-Montoya and codefendant Roberto Bonillo-Esqueda were indicted for participation in a conspiracy to distribute more than 100 grams of methamphetamine on or about May 29, 1997. Mr. Bonillo-Esqueda negotiated a plea agreement, in which he agreed to testify against Mr. Gonzalez-Montoya. The grand jury then returned a three-count superseding indictment against Mr. Gonzalez-Montoya. In the superseding indictment, Mr. Gonzalez-Montoya was first charged conspiracy to possess, with intent to distribute, methamphetamine (count one); and two substantive counts of possession, with intent to distribute, methamphetamine (counts two and three). The jury convicted him counts one and

- 2 -

three and acquitted him of count two. This appeal followed.

Mr. Gonzalez-Montoya's appeal arises from four distinct incidents during trial and sentencing. The first incident involves the court's admission of hearsay testimony by Mr. Bonillo-Esqueda. At trial, Mr. Bonillo-Esqueda named Mr. Gonzalez-Montoya as the source of methamphetamine for a transaction between Mr. Bonillo-Esqueda and "Jose," a government informant, on May 27, 1997. Mr. Bonillo-Esqueda testified to conversations with both Jose and the Defendant and stated that he gave the "buy money" from the May 27 sale to Mr. Gonzalez-Montoya. He further testified that he called Mr. Gonzalez-Montoya after Jose requested more methamphetamine and that Mr. Gonzalez-Montoya agreed to provide four pounds at $8,000 per pound.

Defense counsel objected that the testimony about Mr. Gonzalez-Montoya's statements was inadmissible hearsay. However, the trial judge overruled the objection and stated that he would make "make some findings at an appropriate point." See 2 R. at 57. Mr. Bonillo-Esqueda continued to testify to conversations with Mr. Gonzalez-Montoya regarding the price of the methamphetamine. He also provided details of a rendezvous between himself, Jose, and Mr. Gonzalez-Montoya at a Denver restaurant on May 29, 1997. According to Mr. Bonillo-Esqueda, Mr. Gonzalez-Montoya showed Jose a bag of methamphetamine at the restaurant, and, after two police officers entered the restaurant, Mr. Gonzalez-

Montoya went into an adjoining alley with the bag. There, he gave the bag to Jose and was arrested by an FBI agent.

After hearing this and other evidence, the court found that a conspiracy existed between Mr. Gonzalez-Montoya and Mr. Bonillo-Esqueda and that the statements were made in furtherance of the conspiracy. See 2 R. at 115-116. However, the record reveals that the judge was confused about whether the testimony to which defense counsel objected was offered by Mr. Bonillo-Esqueda or by the DEA agent, Thomas Bartusiak. See id. at 114-15. Moreover, the court was not directed to particular statement's in Mr. Bonillo-Esqueda's testimony challenged as inadmissible hearsay. See id. at 115-16.

The second ground for appeal involves the government's failure to disclose impeachment evidence to defense counsel in a timely manner. During cross-examination, Mr. Bonillo-Esqueda testified that he had not sold drugs to Jose prior to May 27,1997. This testimony contradicted information that the government possessed regarding a sale by Mr. Bonillo-Esqueda to Jose on May 22, 1997. On redirect, the prosecutor attempted to impeach Mr. Bonillo-Esqueda on this issue, but the judge cut him short. When defense counsel objected that the government had failed to disclose impeachment evidence regarding the May 22 sale, the court instructed the government to fax the relevant documents to defense counsel. After reviewing the newly-provided material, defense counsel moved for

a mistrial. The court denied this motion on the grounds that giving the defense lawyer access to the impeachment material and an opportunity to question Mr. Bonillo-Esqueda at trial regarding the May 22 transaction put the defense lawyer in "in the same position [he] would have occupied if [he] had gotten the report on a timely basis." 3 R. at 138. Defense counsel elected not to conduct further cross-examination of Mr. Bonillo-Esqueda. Yet, Mr. Gonzalez-Montoya contends on appeal that his case was prejudiced by the untimely production of the Giglio material.

Mr. Gonzalez-Montoya's third claim arises from the government's erroneous explanation of a jury instruction on deliberate ignorance. During his rebuttal closing argument, the prosecutor told the jury to pay close attention to the court's deliberate ignorance instruction. When the prosecutor started to read the instruction, defense counsel objected. The judge sustained the objection and stated that the court would read the jury instructions, but the prosecutor nevertheless proceeded to advise the jury on the meaning of deliberate ignorance until the court halted him.

As a result of this incident, the court elected not to give the deliberate ignorance instruction. It also declined to give a curative instruction that the government requested on the grounds that further discussion of deliberate ignorance would confuse the jury. Defense counsel did not request a curative

instruction.

Finally, Mr. Gonzalez-Montoya appeals the denial of his request for a two-level sentence reduction under the safety valve provision of the sentencing guidelines, 18 U.S.C.§3553(f). On January 2, 1998, he was sentenced to a term of 108 months in prison, followed by four years of supervised release. The court declined to reduce his sentence under the safety valve provision because he continued to maintain that he delivered the bag of methamphetamine from Mr. Bonillo-Esqueda to Jose without knowledge of its contents. Because the court considered this assertion to be false, it found that Mr. Gonzalez-Montoya failed to satisfy the fifth requirement of the safety valve provision: that the defendant truthfully provide the government with all information concerning the offense.

### Discussion

### A. Admissibility of Co-conspirator Statements

Mr. Gonzalez-Montoya argues that the district court erred in admitting Mr. Bonillo-Esqueda's testimony about statements that Mr. Gonzalez-Montoya made. According to Mr. Gonzalez-Montoya, the trial judge improperly found that such testimony contained co-conspirator statements, which are non-hearsay under Fed.R.Evid. 801(d)(2)(E). Mr. Gonzalez-Montoya contends that the court erred in not holding a pre-trial James hearing to make the three factual determinations necessary to admit co-conspirator statements: (1) that a conspiracy existed, (2)

that both the declarant and the defendant were members of the conspiracy, and (3) that the statements were made in the course of the conspiracy. See United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995); United States v. James, 590 F.2d 575, 582 (5th Cir. 1979).

The record shows that Mr. Bonillo-Esqueda testified to out-of-court conversations between himself, Jose, and Mr. Gonzalez-Montoya. See 2 R. at 56-58. His testimony encompassed out-of-court declarations by Mr. Gonzalez-Montoya admissible as non-hearsay under two distinct sub-sections of Fed.R.Evid. 801(d). Although the district court admitted all of these statements under Fed.R.Evid. 801(d)(2)(E), see 2 R. at 115, Mr. Gonzalez-Montoya's out-of-court statements were also party admissions under Fed.R.Evid. 801(d)(2)(A). See United States v. Mayes, 917 F.2d 457, 463 and n.8 (10th Cir. 1990) (holding that statements by defendants in tape-recorded conversations with co-conspirators were party admissions). Mr. Bonillo-Esqueda recounted a conversation in which the defendant admitted critical elements of the offense with which he was charged: possession of methamphetamine, intent to sell it to Jose, the price, and the date and time that he hoped to close the deal. See 2 R. at 56-58. Such statements fall squarely within the parameters of Fed.R.Evid. 801(d)(2)(A). See Mayes, 917 F.2d at 463; see also United States v. Cass, 127 F.3d 1218, 1222 & n.2 (10th Cir. 1997), cert. denied, 118 S. Ct. 1101 (1998). Hence, we need not

reach the James issue with regard to them.

However, because the district court admitted remarks attributed to both the defendant and Mr. Bonillo-Esqueda under the co-conspirator rule, and because of the apparent confusion about which statements defense counsel alleged to be inadmissible hearsay, see 2 R. at 114-15, we take this opportunity to reiterate our strong preference for James proceedings where the government relies on co-conspirator statements. See United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996); Owens, 70 F.3d at 1123.

Under Tenth Circuit law, the district court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a James hearing or by provisionally admitting the statement "with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony or other evidence." Owens, 70 F.3d at 1123. In either case, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence. See Fed. R. Evid. 801(d)(2); see also United States v. Bourjaily, 483 U.S.171, 181(1987).

Here, the presence of Mr. Gonzalez-Montoya at the restaurant and in the alley with methamphetamine in his hands, the transfer of marked "buy money" between himself and Mr. Bonillo-Esqueda, combined with the provisionally-

admitted hearsay testimony, support the court's determination that a conspiracy existed. We reject Mr. Gonzalez-Montoya's argument that he had no more than a buyer-seller relationship with Mr. Bonillo-Esqueda.  As we noted in United States v. Flores, 149 F.3d 1272, 1277 (10th Cir.1998), "the purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors."  Id.; see also United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996).  Neither Mr. Gonzalez-Montoya, nor Mr. Bonillo-Esqueda, qualified as a mere consumer.

Because Mr. Bonillo-Esqueda's testimony contained both non-hearsay party admissions and statements that the government proved were made in furtherance of the conspiracy, we hold that it was properly admitted.  However, this case underscores our preference for the use of pre-trial hearings to determine the existence of the predicate conspiracy.

### B. Untimely Disclosure of Giglio Evidence

Mr. Gonzalez-Montoya unsuccessfully sought a mistrial on the grounds that the government's violation of the disclosure rules of Giglio v. United States, 405 U.S. 150, 153-54 (1972), deprived him of a fair trial. We review questions regarding the disclosure of exculpatory or impeachment evidence de novo. See Smith v. Sec. of New Mexico Dep't. of Corrections, 50 F.3d 801, 827 (10th Cir. 1995).   Impeachment, as well as exculpatory evidence falls within the rule,

- 9 -

articulated in <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), that suppression of material information favorable to the accused violates due process.  <u>See</u> <u>Giglio</u>, 405 U.S. at 154; <u>Smith</u>, 50 F.3d at 822, 825.  In order to establish a <u>Brady</u> or <u>Giglio</u> violation, "the defendant bears the burden of establishing (1) that the prosecution suppressed the evidence, (2) that the evidence was favorable to the accused, and (3) that the evidence was material."  <u>Smith</u>, 50 F.3d at 824.  According to the Supreme Court, the criterion of materiality is met only if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defense.  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>see also</u> <u>Smith</u>, 50 F. 3d at 827.

The documents relating to Mr. Bonillo-Esqueda's involvement in an earlier drug transaction constituted impeachment evidence that the prosecution should have disclosed in a timely manner.  <u>See</u> 3 R. at 137.  Mr. Bonillo-Esqueda was an alleged co-conspirator.  He was thus a material witness whose credibility, or lack thereof, played a critical role in the determination of Mr. Gonzalez-Montoya's guilt or innocence.  <u>See</u> <u>Giglio</u>, 405 U.S. at 15; <u>United States v. Buchanan</u>, 891 F.2d 1436, 1443 (10th Cir. 1989).

In denying a mistrial, the district court incorrectly stated that bad faith is a prerequisite for a mistrial on <u>Giglio</u> grounds.  <u>See</u> 3 R. at 134. Constitutional error arises from "the character of the evidence, not character of the prosecutor."

United States v. Agurs, 427 U.S. 97, 107 (1976); Brady, 373 U.S. at 8. Although we held in United States v. Dennison, 891 F.2d 255, 260 (10th Cir. 1989), that dismissal of a case in mid-trial for failure to fully comply with a discovery order is too extreme a sanction where the prosecutor did not act in bad faith and no prejudice occurred, our precedent establishes that "the term 'suppression,' in the Brady context, does not require a finding of . . [a] culpable state of mind. . . ." Smith, 50 F.3d at 824; see also, e.g., United States v. Sullivan, 919 F.2d 1403, 1426 (10th Cir. 1990). Distinctions between late disclosure and non-disclosure, good faith and bad faith, have no relevance if the government's conduct prejudices the outcome of the case.

Here, no prejudice resulted. The trial judge found that untimely disclosure did not affect the results of the proceeding because defense counsel had an opportunity to review the new evidence and question Mr. Bonillo-Esqueda about it. See id. at 138. When assessing the materiality of Giglio information, we must consider the significance of the suppressed evidence in relation to the entire record. See Smith, 50 F.3d at 827. We will not automatically order a new trial "whenever a combing of the prosecutor's files . . . has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." Giglio, 405 U.S. at 154; United States v. Washita Construction Co., 780 F.2d 809, 824 (10th Cir. 1986).

On appeal, Mr. Gonzalez-Montoya has failed to demonstrate a reasonable probability that timely revelation of the impeachment evidence would have altered the outcome of his case. See Bagley, 473 U.S. at 682. After obtaining and reviewing the new evidence during trial, defense counsel declined to interview Mr. Bonillo-Esqueda or to examine him in front of the jury about the prior drug deal. See 3 R. at 136. The record suggests, and defense counsel conceded at oral argument, that the decision not to probe the issue further stemmed from concern about opening the door to evidence of the Defendant's involvement in the earlier transaction. See 2 R. at 95-96, 133. Defense counsel stated at oral argument that, if he had obtained the impeachment evidence earlier, he would have used a private investigator to show that Mr. Bonillo-Esqueda was the leader and organizer of the illegal activity. However, the defense lawyer's reluctance to question Mr. Bonillo-Esqueda about the May 22 transaction, for fear of implicating Mr. Gonzalez-Montoya, would not have abated with additional time to prepare. Thus, the district court properly denied Mr. Gonzalez-Montoya's motion for a mistrial.

## C. Deliberate Ignorance Instruction

Mr. Gonzalez-Montoya contends that the prosecutor committed misconduct when he discussed the "deliberate ignorance" standard in his rebuttal closing argument and that the court abused its discretion in failing to give a curative jury

instruction.

Defense counsel objected when the prosecutor began to read the deliberate ignorance instruction, but he did not challenge the prosecutor's subsequent misstatement of the law. Because defense counsel did not specifically object to the prosecutor's remarks about the reasonable person standard, we review them for plain error. See United States v. Olano, 507 U.S. 725, 731 (1993); United States v. Oberle, 136 F.3d 1414, 1421 (10th Cir. 1998), cert. denied, 1998 WL 396485 (1998). A court of appeals has the authority, but is not required, to order correction of plain errors that were not brought to the attention of the district court, if they affect substantial rights. See Olano, 507 U.S. at 735. We employ a two-step process in evaluating claims of prosecutorial misconduct: First, we determine whether the prosecutor's behavior was improper; if so, we decide whether it mandates reversal. See id. In evaluating such incidents for plain error, we will reverse "only if, after reviewing the entire record, we conclude that the error is obvious and one that would undermine the fairness of the trial and result in a miscarriage of justice." Id.

Here, the prosecutor's definition of deliberate ignorance as failure to learn what a reasonable person would know represented an incorrect statement of the law. Deliberate ignorance is found where the defendant had subjective, rather than objective knowledge of his criminal behavior. See United States v. Lee, 54

F.3d 1534, 1538 (10th Cir. 1995). However, the fact that the prosecutor misstated the standard does not mean that Mr. Gonzalez-Montoya was deprived of a fair trial. See Oberle, 136 F.3d at 1421. We generally do not reverse a conviction "if the conduct [that the defendant challenges] was merely 'singular and isolated.'" United States v. Ivy, 83 F.3d 1266,1288 (10th Cir. 1996) (quoting United States v. Pena, 930 F.2d 1486, 1491 (10th Cir. 1991). Here, the inappropriate remarks constituted one incident that the trial court cut short sua sponte by censuring the prosecutor before the jury.

Mr. Gonzalez-Montoya also contends that the district court's failure to give a deliberate ignorance instruction "left the jury without anything to guide them but the prosecutor's misstatement of the law." See Aplt. Br. at 17. Even if defense counsel had made a timely objection at trial, curative actions by the district court constitute only one factor in our determination of whether prejudice resulted. See United States v. Lonedog, 929 F.2d 568, 572 (10th Cir. 1991). Although the trial judge decided not to revisit the deliberate ignorance issue, he reminded the jury that, where the court and the lawyers disagreed, the jury was to be governed by the court's version of the instruction and the law. See 3 R. at 293; see also Ivy, 83 F.3d at 1288 (prosecutorial misconduct not usually prejudicial where the court tells the jury what weight to give the closing argument). Viewing the prosecutor's misconduct in light of the entire record, we conclude that the inappropriate

remarks did not "influence the jury to convict on grounds other than the evidence presented" and that the fairness of Mr. Gonzalez-Montoya's trial was not undermined. United States v. Ramirez, 63 F.3d 937, 944 (10th Cir. 1995) (quoting United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993)).

Nor did the court abuse its discretion in deciding not to give the deliberate ignorance instruction. We review refusal to give a particular jury instruction for abuse of discretion. See United States v. Pacheco, 154 F.3d 1236, 1238 (10th Cir. 1998); United States v. McIntosh, 124 F.3d 1330, 1337 (10th Cir. 1997). While "[a] defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law and if he has offered sufficient evidence for the jury to find in his favor," McIntosh, 124 F.3d at 1337, Mr. Gonzalez-Montoya did not request a deliberate ignorance instruction. In fact, before closing arguments, defense counsel argued that such an instruction should not be given. See 3 R. at 229. In omitting the deliberate ignorance instruction, the trial court essentially complied with defense counsel's wishes and punished the government for its inappropriate remarks.

Mr. Gonzalez-Montoya also maintains that, in a broader sense, the jury was improperly instructed on the controlling principles of law. We consider jury instructions de novo to determine whether, as a whole, they correctly stated the governing law and provided the jury with a sufficient understanding of the

relevant standards and issues. See Pacheco, 154 F.3d at 1238. Viewed in their entirety, the instructions informed the jury in the instant case that the government must prove knowledge and intent.

We decline to order a new trial because of either the prosecutor's misstatement of the deliberate ignorance standard or the court's refusal to give a curative instruction.

### D. Safety Valve Provision

Finally, Mr. Gonzalez-Montoya contends that he was improperly denied a two-level downward adjustment under the safety valve provision of the sentencing guidelines, 18 U.S.C. § 3553(f). We review the district court's determination of a particular defendant's eligibility for relief under § 3553(f) for clear error. See United States v. Roman-Zarate, 115 F.3d 778, 784 (10th Cir. 1997); United States v. Acosta-Olivas, 71 F.3d 375, 377 n.3 (10th Cir. 1995). To the extent that district court interpreted the "scope and meaning" of 3553(f)(5), we review its legal interpretation de novo. See Acosta-Olivas, 71 F.3d at 377 n.3.

To override a mandatory minimum sentence, a defendant must prove that he meets all five requirements of the safety valve provision: (1) that he does not have more than one criminal history point under the sentencing guidelines; (2) that he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) that the offense did not

result in death or serious bodily injury; (4) that the defendant was not a leader or organizer of the offense and that he was not engaged in a continuing criminal enterprise; and (5) that, not later than the time of sentencing, he "truthfully provided to the Government all information and evidence concerning the offense or offenses that were part of the same course of conduct or a common scheme or plan." 18 U.S.C. § 3553(f). The burden of proving all five requirements by a preponderance of the evidence lies with the defendant. See United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996); see also United States v. Ortiz, 136 F.3d 882, 883 (2d Cir. 1997), cert. denied, 118 S. Ct. 1104 (1998).

The district court's ruling that Mr. Gonzalez-Montoya did not qualify for a downward adjustment under § 3553(f) hinged on his failure to satisfy the fifth requirement. Mr. Gonzalez-Montoya continued to maintain at sentencing that he was too drunk on May 29 to knowingly participate in a drug deal or to be aware of the contents of the bag. See 4 R. at 7. His written statement that he had consumed 10 to 12 beers in several hours conflicted with his subsequent trial testimony that he drank as many as 25 beers; both of these claims belied the lucidity he displayed at the time of arrest. Moreover, he denied knowing Mr. Bonillo-Esqueda's name or conversing with him prior to May 29, 1997. On this basis, the trial judge found that Mr. Gonzalez-Montoya had not conveyed to the government "all information or evidence" about the May 29 offense, as required by § 3553(f)(5). See 3 R. at 18.

Mr. Gonzalez-Montoya argues that the "tell all" requirement of 3553(f)(5) does not mandate a confession of guilt on the part of the defendant. While we agree that the safety valve provision and acceptance of responsibility under U.S.S.G. 3E1.1(a) are not coterminous, we conclude that 3553(f)(5) goes beyond merely barring the defendant from denying the offense of conviction. See United States v. Sabir, 117 F.3d 750, 753 (3d Cir. 1997). Under § 3353(f)(5), a defendant must affirmatively volunteer all he knows, including facts beyond the basic elements of the crime. See United States v. Myers, 106 F.3d 936, 941 (10th Cir. 1997, cert. denied, _ U.S. _, 117 S. Ct. 2446 (1997) (stating that "section 5 is very broad"); Sabir, 117 F.3d at 752. Because both the trial court and the jury found that Mr. Gonzalez-Montoya untruthfully minimized his role in the May 29 drug transaction, we cannot say that the trial court's findings were clearly erroneous. See Sabir, 117 F.3d at 753 (holding that defendant's false efforts to minimize his role disqualified him from a safety valve adjustment).

Conviction by a jury does not foreclose relief under the safety valve provision. See United States v. Sherpa, 110 F.3d 656, 660 (9th Cir. 1996) (holding that defendant who claimed ignorance of the contents of a suitcase satisfied §3553(f)(5), even though the jury found that he knowingly possessed heroin). However, a trial judge, like a jury, is free to find a defendant's contentions untruthful. Given such a finding, we hold that Mr. Gonzalez-Montoya

did not meet his burden of establishing all five requirements for a downward adjustment under safety valve provision.

AFFIRMED.