FILED
United States Court of Appeals
Tenth Circuit

**March 30, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JULIO C. DE LA TORRE,

Defendant - Appellant.

No. 09-3029

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 6:08-CR-10007-MLB-1)**

---

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for Defendant-Appellant.

Matthew T. Treaster, Assistant United States Attorney (Lanny D. Welch, United States Attorney, with him on the briefs), District of Kansas, Wichita, Kansas, for Plaintiff-Appellee.

---

Before **MURPHY**, **McWILLIAMS**, and **GORSUCH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

**I. Introduction**

Julio De La Torre was charged in a two-count superceding indictment with

possessing with the intent to distribute fifty grams or more of methamphetamine

and possessing with the intent to distribute less than fifty kilograms of a substance containing a detectable amount of marijuana, both in violation of 21 U.S.C. § 841(a)(1). After a jury trial, at which he testified, De La Torre was convicted of both counts and was sentenced to 121 months' imprisonment.

De La Torre appeals his methamphetamine conviction and sentence. He argues the district court erred by instructing the jury it could find him guilty of possessing methamphetamine, even if it believed he only knew marijuana was in the backpack and was unaware methamphetamine was present. He also argues the district court erred in admitting statements he made during an interview with Pretrial Services. Finally, De La Torre argues the district court erred by refusing to consider his trial testimony as qualifying him for safety-valve treatment at sentencing.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, the court **AFFIRMS** De La Torre's conviction but **REMANDS** to the district court to vacate and reconsider his sentence for the purpose of evaluating whether the safety-valve provision should be applied.

## II.  Background

De La Torre was charged in a two-count superceding indictment with possessing with the intent to distribute fifty grams or more of methamphetamine and possessing with the intent to distribute less than fifty kilograms of a substance containing a detectable amount of marijuana, both in violation of 21

U.S.C. § 841(a)(1). At trial, De La Torre testified that for several days prior to February 16, 2007, he was partying in Room 150 of the Comfort Inn in Wichita, Kansas. While there, he admits he smoked marijuana, but claims he neither saw nor used methamphetamine.

On the morning of February 16, 2007, the hotel's desk clerk called the Wichita Police Department and reported what she suspected was a false identification used to rent Room 256. When officers arrived, the clerk provided a copy of the identification card and explained that the people staying in Room 150 were in the process of moving to Room 256. Additionally, the clerk stated other guests had reported the smell of marijuana coming from Room 150.

De La Torre testified he awoke that morning when someone in the room started screaming that the police were at the hotel. At that point, De La Torre claimed one of the people in the room handed him a backpack and instructed De La Torre to follow him. They left the hotel, at which point the other person told De La Torre to get rid of the backpack. Officer Rago, who was in the parking lot, testified he saw De La Torre and another individual run from the hotel and hop over a short fence. Officer Rago testified De La Torre was carrying a backpack, which he threw into a culvert as he ran away.

Officer Rago informed Officer Springob about what he saw. A few minutes later, De La Torre and a companion walked back to the hotel through the parking lot. Officer Rago recognized them and approached to ask them where they came

-3-

from and where they were going. Each gave a different answer: one claimed they were coming from the store while the other claimed they were returning from a friend's house. Meanwhile, Officer Springob retrieved the backpack from the culvert. Officer Springob testified he could smell marijuana inside the culvert. When he looked inside the backpack, Officer Springob found a shoe box containing multiple bricks of marijuana, a large bag of methamphetamine, rubber bands, Ziploc bags, and digital scales. As a result, Officer Rago took both men into custody.

Officer Springob read De La Torre his *Miranda* warnings, and De La Torre agreed to speak with him about the incident. According to Officer Springob, De La Torre admitted knowing the backpack contained marijuana, scales, Ziploc bags, rubber bands, digital scales, and "ice," a form of methamphetamine. Officer Springob also testified De La Torre admitted being in Room 150 for about three days, where he hung out with friends and used marijuana and ecstasy. De La Torre told Officer Springob his friends sold narcotics in the room. He also admitted using methamphetamine in the past, but not at the hotel.

De La Torre testified he did not tell the officer he knew there was methamphetamine in the backpack. Instead, he claimed he told Officer Springob he believed it only contained marijuana because he and others in the hotel room had only used marijuana. Nonetheless, De La Torre admitted the quantities of both the methamphetamine and marijuana discovered in the backpack were

-4-

distribution quantities. De La Torre also admitted he had used methamphetamine in the past, but claimed he had not used any in the year prior to the incident at the hotel.

At a sidebar, the Government sought to introduce a statement De La Torre made to Pretrial Services that he used methamphetamine in February 2007. The Government emphasized this testimony was important because the Government "believe[d] that his use in February of 2007 was the day in question and that shows he had knowledge there was meth in that hotel room." De La Torre objected due to the absence of notice and the confidentiality of statements made to Pretrial Services. The district court overruled De La Torre's objection and permitted the Government to present the statement, but only for the purposes of impeachment. During its re-cross-examination of De La Torre, the Government asked whether he told a federal probation officer he had actually used methamphetamine in February 2007. De La Torre testified he told the probation officer he used methamphetamine about two years prior to his May 2008 interview. On rebuttal, the Government called the probation officer, who testified De La Torre specifically told her he used methamphetamine in February 2007. Immediately after this testimony, the district judge instructed the jury it could only consider evidence of the statement "for the purpose of judging his believability or his credibility and not for any other reason."

The jury ultimately convicted De La Torre of both counts. At sentencing, De La Torre sought the benefit of the Sentencing Guidelines' safety-valve provision, USSG § 5C1.2. The parties disputed whether he "truthfully provided to the Government all information and evidence the defendant ha[d] concerning the offense" as required under § 5C1.2(a)(5). De La Torre argued his testimony at trial fulfilled this requirement. The court denied De La Torre's request on the grounds that "the mere fact that defendant testified at trial does not entitle him to 'safety valve' consideration." The district court ultimately sentenced De La Torre to 121 months' imprisonment to be followed by five years' supervised release.

## III. Discussion

### A. *De La Torre's Knowledge of the Backpack's Contents*

De La Torre first challenges his conviction for possessing methamphetamine with the intent to distribute. He argues the district court erred in instructing the jury that the Government did not have to prove beyond a reasonable doubt that he knew the precise nature of all controlled substances he possessed. This court reviews "the district court's decision to give a particular jury instruction for abuse of discretion and consider[s] the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *United States v. Fria Vazquez Del Mercado*, 223 F.3d 1213, 1216 (10th Cir. 2000) (quotation omitted).

De La Torre's challenge stems from his testimony that while he believed the backpack contained marijuana, he had no idea it also contained methamphetamine. In support of this argument, he points to his testimony that he only smoked marijuana in the hotel room and did not see methamphetamine while he was there. Specifically, De La Torre argues Tenth Circuit case law does not permit the Government to use his admission that he knew he possessed a single controlled substance, marijuana, to establish the mens rea for possessing both marijuana and methamphetamine under 21 U.S.C. § 841(a)(1).

Here, the district court instructed the jury[1]:

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: the defendant knowingly or intentionally possessed a controlled substance;

Second: the controlled substance was methamphetamine;

Third: the defendant possessed the methamphetamine with the intent to distribute it; and

_____

[1]The first two elements in the instruction given by the district court deviated from Tenth Circuit Criminal Pattern Jury Instruction 2.85, which suggests the Government must prove the defendant knowingly possessed a particular controlled substance. The first element listed in Pattern Instruction 2.85 is: "the defendant knowingly or intentionally possessed [name controlled substance] as charged." The district court correctly noted that this portion of the Pattern Instruction incorrectly states the law of this circuit. Instead, the district court properly addressed this issue by breaking the Pattern Instruction's first element into two separate elements requiring proof (1) the defendant knew he possessed a controlled substance and (2) the controlled substance was methamphetamine.

-7-

Fourth: the weight of the methamphetamine defendant possessed was at least 50 grams.

It also instructed the jury that the Government did not need "to prove beyond a reasonable doubt that the defendant knew the precise nature of the controlled substance or substances."

Contrary to De La Torre's argument, the district court's instructions were consistent with this court's interpretation of § 841(a)(1). The statute does not require the Government to prove a defendant knew the precise nature of the controlled substance he possessed, so long as he knew he did in fact possess a controlled substance. *United States v. Johnson*, 130 F.3d 1420, 1428 (10th Cir. 1997). The Government can establish the mens rea for the possession element by proving only that the defendant knew he possessed some controlled substance. Once it proves the defendant had the requisite guilty mind to possess some controlled substance within the universe of all controlled substances, it has established the mens rea necessary to establish the possession element with respect to any and all drugs the defendant actually possessed. This is so even if the defendant was unaware of the nature or number of controlled substances he actually possessed. The Government must then prove the defendant did possess the particular controlled substance charged in the indictment. *See United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002). The Government is not required, however, to prove that the controlled substance the defendant actually

possessed corresponds to the controlled substance the defendant believed he possessed.[2]

In the instant case, De La Torre's admission established he had the necessary mens rea to be convicted of possessing methamphetamine with the intent to distribute it. Even if De La Torre was, as he claimed, wholly unaware of the presence of a second controlled substance in the backpack,[3] he admits he knew the backpack contained a controlled substance. This admission was sufficient to establish his guilty mind as to the possession element with respect to both drugs. Thereafter, De La Torre admitted he did in fact possess distribution amounts of both marijuana and methamphetamine. Consequently, De La Torre's statements were sufficient for the jury to convict him of both counts. The district

---

[2]De La Torre does not argue the district court's wording of the third element required the jury to find he intended to distribute methamphetamine specifically. He simply argues that when two controlled substances are present, the Government must establish he actually knew both controlled substances were present, not just one. In other words, his argument focuses only on the first element of the district court's instruction. Accordingly, this court need not determine whether the third element of the district court's instruction imposed a higher burden on the prosecution than the law requires with respect to the defendant's knowledge of the particular controlled substances he intended to distribute. *Cf. United States v. Romero*, 136 F.3d 1268, 1271-73 (10th Cir. 1998) ("[T]he Government is required to prove all elements put forth in [a jury instruction to which the Government did not object] . . . even if the Government would not, under law, be otherwise required to do so."). De La Torre admits he possessed distributable quantities of both marijuana and methamphetamine.

[3]Though this court makes no credibility determinations, it is worth noting that whether De La Torre was unaware of the presence of methamphetamine was disputed at trial. Specifically, Officer Springob testified De La Torre admitted knowing the backpack contained "ice."

court did not abuse its discretion or misapply the law in giving the relevant instruction.

*B. Admissibility of Statements from De La Torre's Pretrial Interview*

De La Torre next argues the district court erroneously admitted a statement from his pretrial interview regarding his use of methamphetamine in February 2007. This court reviews evidentiary rulings for an abuse of discretion. *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009).

De La Torre's argument hinges on 18 U.S.C. § 3153(c), which provides:

> Information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential.

18 U.S.C. § 3153(c)(1). Additionally, § 3153(c)(3) provides that confidential information obtained by Pretrial Services

> is not admissible on the issue of guilt in a criminal judicial proceeding unless such proceeding is a prosecution for a crime committed in the course of obtaining pretrial release or a prosecution for failure to appear for the criminal judicial proceeding with respect to which pretrial services were provided.

As De La Torre himself points out, however, the inadmissibility of statements made to Pretrial Services as to the issue of guilt does not restrict the Government from using such statements to impeach a defendant's trial testimony. Indeed, a number of other circuits have recognized that statements made to Pretrial Services are admissible for impeachment purposes. *See United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004); *United States v. Stevens*, 935 F.2d 1380, 1395-97 (3d

-10-

Cir. 1991); *United States v. Wilson*, 930 F.2d 616, 619 (8th Cir. 1991). This court is persuaded by these decisions and agrees § 3153(c)'s statutory bar to using such statements to prove guilt does not prohibit the Government from offering such statements to impeach the defendant's credibility.

While the Government initially sought to introduce the Pretrial Services statement to suggest De La Torre had in fact used methamphetamine while at the hotel, and therefore had reason to know the backpack contained methamphetamine, the district court specifically ruled that the statement regarding De La Torre's February 2007 methamphetamine use could only be admitted to impeach De La Torre's trial testimony. Moreover, after the probation officer testified regarding De La Torre's statement, the court gave an appropriate limiting instruction informing the jury it could only consider the statement for the purposes of assessing De La Torre's credibility. Because the statement was only admitted for the limited purpose of impeachment, the district court did not abuse its discretion.

*C. Safety-Valve Application*

De La Torre next argues the district court erred by denying his request for application of USSG § 5C1.2, the safety-valve provision, in calculating his sentence. "We review a district court's factual determination on safety-valve eligibility for clear error, including whether a defendant has provided the government with complete and truthful information. A district court's legal

interpretation guiding its application of the safety-valve provision is reviewed de novo." *United States v. Cervantes*, 519 F.3d 1254, 1256 (10th Cir. 2008) (citation omitted).

USSG § 5C1.2(a) provides that, when a defendant has committed an offense under 21 U.S.C. § 841, "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence," so long as the court determines the applicable criteria are met. One criterion a defendant must establish in order to qualify for the safety-valve adjustment, and the only one at issue here, is:

> [N]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

USSG § 5C1.2(a)(5); 18 U.S.C. § 3553(f)(5). Additionally, if all necessary criteria are met, a defendant whose guidelines range is calculated under USSG § 2D1.1 is entitled to a two-level reduction in his offense level. USSG § 2D1.1(b)(11).

At sentencing, De La Torre's advisory guidelines range was calculated under USSG § 2D1.1 and he sought application of the safety-valve provision even though he did not consent to being de-briefed by the Government. Nonetheless,

-12-

De La Torre argued he fulfilled the requirements of § 5C1.2(a)(5) because by testifying at trial, he provided the Government with "all information and evidence" he had concerning the crime. The district court categorically concluded that trial testimony alone can never support safety-valve consideration and denied De La Torre's request. On appeal, the Government argues the district court was correct in refusing to consider the safety-valve adjustment because § 5C1.2(a)(5) requires a defendant to meet directly with Government agents for de-briefing in order to qualify.

Neither USSG § 5C1.2(a)(5) nor its statutory counterpart, 18 U.S.C. § 3553(f)(5), delineates the suitable methods of providing the information to the Government. Additionally, neither party points to any decision issued by this or any other federal circuit court addressing whether trial testimony itself may constitute an acceptable method of providing the Government with such information. This is not surprising, however, as a defendant's trial testimony most often includes a denial of the essential factual elements of guilt and directly conflicts with the jury's finding of guilt. No reasonable defendant could claim safety-valve eligibility based on trial testimony that necessarily contradicts the conviction itself.

Accordingly, this case presents a novel circumstance because De La Torre's testimony primarily sought to convince the jury that while he knew he possessed marijuana, he did not know he possessed methamphetamine. As discussed earlier,

because De La Torre admitted possessing a distributable amount of a controlled substance, his alleged lack of knowledge regarding the varieties of controlled substances he actually possessed does not shield him from criminal liability under 21 U.S.C. § 841. Thus, it is conceivable that a fact-finder could believe De La Torre's testimony without necessarily contradicting the conviction. Similarly, in rare circumstances, a defendant may be eligible for an acceptance of responsibility adjustment, even though he proceeded to trial. *See* USSG § 3E1.1, cmt. n. 2.

In describing 18 U.S.C. § 3553(f)(5), from which the language in USSG § 5C1.2(a)(5) is drawn, this court has explained the "defendant must affirmatively volunteer all he knows, including facts beyond the basic elements of the crime." *United States v. Gonzalez-Montoya*, 161 F.3d 643, 652 (10th Cir. 1998). Though undoubtedly rare, there are circumstances in which trial testimony could be sufficiently thorough so as to constitute adequate compliance with this requirement. The language of USSG § 5C1.2(a)(5) and 18 U.S.C. § 3553(f)(5) does not require the defendant to consent to a private de-briefing with the Government, nor does it prohibit trial testimony as a potential method of providing the necessary information. The language of the safety-valve provision only requires the defendant provide, and the Government receive, the information "not later than the time of the sentencing hearing." USSG § 5C1.2(a)(5); 18 U.S.C. § 3553(f)(5).

De-briefing may be logistically preferential to trial testimony from the Government's standpoint and, in most cases, it may be the only practical method by which the defendant can provide the Government with complete information regarding the offense. Here, however, it appears De La Torre's testimony on direct examination was quite broad, such that the Government may have had a full and fair opportunity to cross-examine the defendant "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2(a)(5). Additionally, if the Government believes De La Torre's trial testimony was neither truthful nor complete, or believes it lacked an adequate opportunity to cross-examine De La Torre due to the scope of direct examination, the Government has a sufficient opportunity to challenge the safety-valve request on those grounds at re-sentencing.

This court concludes a district court is not categorically precluded from considering a defendant's trial testimony in determining whether he qualifies for the safety-valve adjustment under USSG § 5C1.2(a)(5). On remand, the burden remains on De La Torre to establish his eligibility by a preponderance of the evidence. *Gonzalez-Montoya*, 161 F.3d at 652. As this court explained in *Cervantes*,

> [a]bsent a favorable recommendation from the government, a defendant needs to put on evidence at the sentencing hearing to meet his burden of showing that he truthfully and fully disclosed everything he knew and to rebut government claims to the contrary. This evidence may include proffer documents, stipulated facts, or, in

-15-

> all likelihood, testimony from the defendant or a representative of the government subject to cross-examination. Security precautions may be taken if necessary. It is axiomatic that he who has the burden of proof must put on *some evidence* at a sentencing hearing to allow the district court to find, by a preponderance of the evidence, that he is eligible for the safety-valve adjustment.

519 F.3d at 1258. While De La Torre did not produce any evidence at the sentencing hearing below, the district court did not permit him the opportunity to do so, instead concluding trial testimony could not, under any circumstances, satisfy USSG § 5C1.2(a)(5). On remand, De La Torre shall be permitted to attempt this showing.

Finally, in its supplemental brief, the Government argues that any error is harmless because De La Torre's 121-month sentence is within the guidelines range even if that range is revised by the application of the safety-valve. Without considering the safety-valve provision's applicability in light of De La Torre's trial testimony, the district court calculated De La Torre's guidelines range as 121 to 151 months. The district court imposed a sentence at the bottom of the guidelines range, 121 months. Had the district court fully considered the safety-valve provision and determined that it applied, De La Torre's guidelines range would have been reduced to 97 to 121 months under USSG § 2D1.1(b)(11).

According to the Government, the district court's imposition of a sentence which would also fall within the guidelines range reduced by application of the safety-valve provision, coupled with the court's refusal to grant a downward

variance, indicates the district court would have imposed the same sentence absent any error. This court disagrees and concludes the Government has failed to meet its burden of establishing the district court would have imposed the same sentence. *See United States v. Lozano*, 514 F.3d 1130, 1134 (10th Cir. 2008). At sentencing, the district court indicated its intent to sentence De La Torre at the low-end of the relevant guidelines range. Thus, the district court's refusal to grant a downward variance outside the advisory guidelines range does not, in and of itself, suggest the court would not impose a lower sentence within a reduced guidelines range. Absent any other indication to the contrary, this court concludes the record does not support the Government's contention that the district court would have imposed the same sentence under a revised guidelines range.

Accordingly, De La Torre's sentence must be vacated and remanded so he can attempt to present sufficient evidence from which the district court can determine whether he is eligible for the safety-valve adjustment.

**IV. Conclusion**

For these reasons, the court hereby **AFFIRMS** De La Torre's convictions but **REMANDS** to the district court to vacate and reconsider De La Torre's sentence for the purpose of evaluating whether the safety-valve provision should be applied.

-17-