FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID BERT PAYCER,

    Defendant - Appellant.

No. 23-5120

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:22-CR-00215-GKF-1)**

_____

Daniel L. Kaplan, Assistant Federal Public Defender (Jon M. Sands, Federal Public Defender, with him on the briefs), District of Arizona, Phoenix, Arizona, for Defendant – Appellant.

Steven J. Briden, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with him on the brief), Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff – Appellee.

_____

Before **ROSSMAN**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

## I. INTRODUCTION

A jury found David Paycer guilty of Aggravated Sexual Abuse of a Minor

Under Twelve Years of Age in Indian Country. *See* 18 U.S.C. §§ 1151, 1152,

2241(c). Paycer challenges his conviction on appeal, contending the district court erred when it (1) instructed the jury regarding the competency and credibility of child witnesses; (2) refused to instruct the jury to consider Federal Rule of Evidence 414 "other crimes" evidence only if it unanimously found, by a preponderance, he committed the other crimes; (3) denied a motion to suppress statements he made while subject to custodial interrogation; and (4) admitted at trial an alleged hearsay statement. He further claims that even if the district court's errors are individually harmless, he was prejudiced by their cumulative effect. We conclude Paycer is not entitled to appellate relief. In so ruling, we specifically hold a jury need not unanimously find by a preponderance that a defendant committed Rule 414 crimes before individual jurors can consider the other crimes evidence in deciding whether the defendant committed the charged crime of child-sexual molestation. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's judgment of conviction.

## II. BACKGROUND[1]

The child sex abuse at issue here arose out of the brief marriage—from January to May of 2021—between Paycer and Melissa Parsons. During the marriage, Paycer received disability payments and did not work. Parsons worked random, albeit

---

[1] Because the issues on appeal are largely legal in nature and because the case involves child sex abuse, background facts are limited to those necessary to understand the relevant legal issues. The exception is Paycer's challenge to the denial of his motion to suppress. Additional facts relating this issue are set out *infra*.

2

mostly night, shifts at a restaurant. After the marriage, Paycer moved in with Parsons and her seven-year-old daughter SL. Because Parsons frequently worked nights and Paycer did not work, SL often ended up in Paycer's sole care. According to SL, Paycer used those opportunities to touch her in sexually inappropriate ways.

During the summer of 2021, SL and her sister visited Texas for a family reunion. While there, SL disclosed to her cousin that Paycer molested her. SL repeated the allegation while her sister filmed it with a phone. When SL and her sister returned home, they played the recording for Parsons. Parsons took SL to the hospital and contacted the police. Thereafter, one of SL's family members reached out to Paycer's Facebook contacts to investigate the possibility Paycer molested other children. The contacts' responses were forwarded to FBI Special Agent Daniel Berardicurti, who used the information as part of a criminal investigation.

In July 2022, the government obtained an indictment charging Paycer with sexual abuse of SL. On August 1, 2022, local police took Paycer into custody. The next day, Berardicurti and FBI Special Agent Nathan Ma interrogated Paycer. Although Paycer denied having touched SL sexually, agents elicited statements that were later used against him at trial. Paycer ultimately pleaded not guilty and filed a pretrial motion to suppress his statements to the FBI agents. After conducting an evidentiary hearing, the district court denied Paycer's motion to suppress. The case then proceeded to trial.

In its opening statement, the government told the jury it would hear from SL as well as three additional young girls Paycer allegedly molested: IW, CM, and KM.

3

During the government's case, IW, CM, and KM each testified that when she was either six (KM) or seven (IW and CM), Paycer touched her genitals in a sexually inappropriate way, which was similar to the way Paycer allegedly touched SL. The government then presented the testimony of SL. SL described how she came to disclose Paycer's alleged acts of molestation and asserted Paycer touched her "pee spot" under her clothes with his hand on multiple occasions. In addition to the testimony of IW, CM, KM, and SL, the government presented the testimony of additional fact and expert witnesses.

Paycer testified in his own defense and denied molesting SL or any other young girl. He described his personal history, medical issues, and relationship with Parsons. He asserted SL was neglected before he moved in with Parsons and detailed how he took care of her. He introduced SL's affectionate text messages and described how she asked him to call her after he moved out. In addition to his own testimony, Paycer adduced evidence of his good character; testimony from the police officer who investigated CM's allegations against Paycer, who confirmed no charges were filed; and expert witnesses who described the effects Paycer's medical conditions at the time of his interrogation could have had on his cognitive state and described factors and circumstances that may affect the suggestibility of children.

At the conclusion of the presentation of evidence, the jury returned a guilty verdict. The district court sentenced Paycer to imprisonment for life.

### III. DISCUSSION

Paycer asserts errors on the part of the district court undermine his conviction for aggravated sexual abuse of SL. He identifies alleged instructional and evidentiary errors; claims the district court wrongfully denied his motion to suppress; and asserts both the individual and cumulative prejudicial effects of the alleged errors entitle him to a new trial. This court is unconvinced. The district court did not err or plainly err in any manner identified by Paycer.

### A. Evidentiary Issue

The government called Parsons as a trial witness and asked her this question: "Before you married the defendant, did he ever talk to you about any allegations against him?" After Parsons responded in the affirmative, the prosecutor asked her to recount Paycer's statement. After the district court sustained Paycer's simple hearsay objection, the government asserted it was seeking to elicit a statement of a party opponent. Paycer responded: "[t]he time frame and before charges." The district court asked the government to rephrase its question to address the timeline. The government established the timeline of the statement and again asked Parsons whether Paycer ever told her about sexual abuse allegations against him. Paycer did not renew his objection. Parsons responded to the government's questions as follows:

> Q. All right. During that month before you married him, did [Paycer] ever tell you about allegations against him?
>
> A. Yes.
>
> Q. What did he say?

A. That it was an ex and he was out of state during the time period and it couldn't have happened.

Q. Did he say what the allegations were?

A. He said there was a girl, a daughter of an ex.

Q. That had accused him of what?

A. Touching him—or her. Excuse me.

Q. And he told you this before you married him?

A. Correct.

Q. But you still married him?

A. Yes.

Paycer asserts we should review the district court's decision to admit Parsons's testimony for abuse of discretion. He claims the district court abused its discretion because the testimony amounts to double hearsay. *See* Fed. R. Evid. 805 (holding that when testimony relates an out-of-court statement embedded within another out-of-court statement, it is admissible over a hearsay objection only if the rules of evidence provide exclusions or exceptions covering "each part of the combined statements"). Paycer acknowledges the party-opponent exclusion set out in Fed. R. Evid. 801(d)(2) covers his own statement, but claims no rule allows admission of the "'daughter of an [ex's'] statement."

In response, the government contends Paycer failed to preserve his double-hearsay objection and, thus, this court's review is limited to plain error. It notes Paycer initially objected to Parsons's testimony on hearsay grounds, but after

learning the government intended to present the statement of a party opponent, he shifted to a foundation-based objection: "the time frame and before charges." Paycer never presented a response to the party-opponent exception or argued hearsay-within-hearsay. Accordingly, the government contends the alleged evidentiary error Paycer raises on appeal is unpreserved. Furthermore, the government notes Paycer did not argue for relief under the plain error standard in his opening brief. The result, according to the government, is that Paycer's claimed double-hearsay error is waived. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal [] surely marks the end of the road for an argument for reversal not first presented to the district court."). Finally, and in any event, the government argues the district court did not abuse its discretion because, inter alia, the testimony at issue did not contain an embedded hearsay statement.

In his reply brief, Paycer asserts his original hearsay objection was sufficient to preserve the hearsay-within-hearsay objection he is raising on appeal. He claims a double-hearsay issue is not distinct from an ordinary hearsay issue—it is simply a hearsay issue with two levels. Paycer contends that even if he did not preserve the issue, he is entitled to prevail under plain error review. In that vein, he summarily claims the embedded accusation of abuse "is self-evidently a 'statement.'" Appellant's Reply Br. at 30.

7

**1. Preservation**

On the issue of preservation, the government has the far better argument. To preserve an objection to the admission of Parsons's testimony, Paycer was required to "timely object[]" and "state[] the specific ground, unless it was apparent from the context." Fed. R. Evid. 103(a)(1). That is, his objection had to be "sufficiently specific to provide the district court an opportunity to correct its action in the first instance." *United States v. Holloway*, 826 F.3d 1237, 1251 (10th Cir. 2016); *see also United States v. Hubbard*, 603 F.2d 137, 142 (10th Cir. 1979) ("[A]n aggrieved party must present his objection with clarity and specificity to the trial court in order to avoid unnecessary error from occurring."). Paycer's objection failed to specifically and clearly apprise the district court that Parsons's testimony allegedly contained double hearsay. Instead, in response to the government's assertion there was no hearsay problem at all because it sought to elicit a Fed. R. Evid. 801(d)(2) statement of a party opponent, Paycer pivoted to a foundational objection, i.e., "[t]he time frame and before charges." Nor is it clear from the context Paycer was advancing a hearsay-within-hearsay objection. Because Paycer's objection did not afford the district court the required "opportunity to correct its action in the first instance," his double-hearsay claim is unpreserved. *Holloway*, 826 F.3d at 1251.

**2. Standard of Review**

Normally, this court would review the district court's evidentiary decisions for abuse of discretion. *United States v. Smith*, 606 F.3d 1270, 1279 (10th Cir. 2010). Even under that standard, "[g]iven the fact- and case-specific nature of hearsay

8

determinations, our review of those decisions is especially deferential." *United States v. Blechman*, 657 F.3d 1052, 1063 (10th Cir. 2011) (quotation omitted); *see also United States v. Lopez*, 131 F.4th 1114, 1121 (10th Cir. 2025) ("Because hearsay determinations are highly fact-dependent, they trigger heightened deference to the district court's ruling."). Because Paycer's double-hearsay claim was not preserved, however, this court's review is limited to plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012), *overruled on other grounds by, United States v. Bustamante-Conchas*, 850 F.3d 1130, 1144 (10th Cir. 2017) (en banc). The plain-error standard is intentionally difficult to satisfy. *Id.* at 971-72 ("The purpose of plain error review is to instill in litigators the importance of preparing adequately before appearing in the trial court and, as necessary, clarifying issues to that court. Timely, adequate objections allow the trial court to rule in the first instance and, if necessary, correct itself without spawning an appeal." (quotation omitted)).

Paycer did not argue entitlement to plain error relief until his reply brief. This court "generally do[es] not consider arguments made for the first time on appeal in an appellant's reply brief," but instead "deem[s] those arguments waived." *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019). Relying on *United States v. Yurek*, 925 F.3d 423, 445 (10th Cir. 2019), Paycer asserts this general rule does not apply in

9

the context of plain-error review.[2] He argues *Yurek* stands for the following proposition: arguing for plain-error relief in a reply brief is invariably sufficient to preserve plain-error review when an appellant argues an error is preserved in an opening brief. *Yurek* does not stand for any such grand proposition. Instead, it stands for the modest proposition this court has discretion to conduct plain-error review "notwithstanding briefing deficiencies." *Leffler*, 942 F.3d at 1198 (quotation omitted); *see also id.* (specifically describing *Yurek* as one of a series of cases in which this court has "exercised [its] discretion to review claims for plain error when argued for the first time in a reply brief"). It is certainly true that a meaningful assertion in an opening brief that an issue is preserved advances an argument that this court should exercise its discretion to take up a plain-error argument raised for the first time in a reply brief. *Id.* Ultimately, however, this court will exercise its discretion to do so only if such an approach "permits the appellee to be heard and the adversarial process to be served." *Id.* (alteration and quotation omitted). Because the adversarial process will be served by proceeding to the merits, Paycer's claim is reviewed for plain error.

---

[2] Appellant's Reply Br. at 10 ("[If] the appellant argues abuse of discretion in his opening brief, the appellee in [answer] argues that the issue was not preserved and thus plain error review applies, and in his reply brief the appellant argues in the alternative that the plain-error standard is satisfied . . . , this Court—even if it agrees that the error was not preserved—reviews the claim for plain error.").

### 3. Application

Paycer has not demonstrated the district court clearly or obviously erred in admitting Parson's challenged testimony. *See Lopez*, 131 F.4th at 1122 (skipping over issue of error and resolving analogous hearsay issue at the plainness stage of plain-error review). Paycer concedes portions of the statement he made to Parsons about the abuse allegation are not hearsay. Nevertheless, he asserts the embedded accusation of child sex abuse is hearsay. As the government notes, Parsons testified that before she married him, Paycer told her "about [the] allegations against him." Specifically, she testified Paycer said, "it was an ex and he was out of state during the time period and it couldn't have happened." When asked if Paycer relayed "what the allegations were," Parsons replied, "He said there was a girl, a daughter of an ex." She clarified the child accused Paycer of "Touching . . . her." In Parson's recounting of the conversation, the government argues, Paycer did not quote a statement of any other person. Instead, Paycer spoke generically about something that happened to him in the past, not relaying any person's specific oral, written, or non-verbal assertion. In reply, Paycer simply asserts, with no citation to any authority, that the girl's accusation he recounted to Parsons "is self-evidently a 'statement.'" Appellant's Reply Br. at 30.[3]

"An error is *plain* if it is so clear or obvious that it could not be subject to any reasonable dispute." *Lopez*, 131 F.4th at 1122 (quotation omitted). Paycer has not

---

[3] The entirety of Paycer's reply-brief argument is the following: "[T]he government asserts that Mr. Paycer's out-of-court statement 'did not recount a

established it is beyond reasonable dispute that the girl's embedded accusation is a statement. *Greer v. United States*, 593 U.S. 503, 508 (2021) ("The defendant has the burden of establishing entitlement to relief for plain error." (quotation omitted)). This court addressed the issue of implied statements in *Lopez*. 131 F.4th at 1122-27. The appellant in *Lopez* asserted the testimony of police officers implied a witness confirmed the officers' suspicions the appellant committed the crime. *Id.* at 1122. *Lopez* noted this court "often addressed the applicability of the hearsay rule . . . when someone testifies explicitly about what another individual" stated. *Id.* There was not, however, meaningful Tenth Circuit precedent addressing "implied statements," i.e., statements by an out-of-court declarant a jury could infer from a witness's testimony. *Id.* at 1122-24. *Lopez* clarified such implied statements could implicate hearsay concerns, but that "our case law doesn't necessarily treat implied and express statements as interchangeable." *Id.* at 1124. *Lopez* held a hearsay issue arises "only when the testimony involves an 'identifiable' out-of-court statement." *Id.* The resolution of that question—whether the testimony involves an identifiable statement—is context specific. *Id.* at 1124-27.

   *Lopez* makes clear why this court must conclude Paycer failed to carry his burden of demonstrating the existence of a plain error. Rather than engage with the context and trial record, he simply asserts the embedded abuse accusation is "self-

---

statement of any other person.' This is incorrect: Mr. Paycer's statement indicated that a 'daughter of an ex' had 'accused him' of '[t]ouching' her. This is self-evidently a 'statement.'" Appellant's Reply Br. 30 (record citations omitted).

evidently a statement." There is no analysis of whether the record further identifies the girl who made the accusation, to whom the accusation was made, when it was made, for what purpose it was leveled, or how evidence about the embedded accusation fits within the panoply of other evidence of guilt presented by the government. *See id.* (setting out contextual factors courts must consider in deciding whether testimony implies an identifiable out-of-court statement). *Lopez* requires an identifiable implied statement as a predicate to any hearsay issue. *Id.* at 1124. It is not clear or obvious the embedded accusation at issue satisfies that standard. Indeed, Paycer has not even addressed that issue at anything more than a cursory level. Thus, Paycer is not entitled to plain-error relief.

**B. Custodial Statements**

Agents Berardicurti and Ma conducted a custodial interrogation of Paycer on August 2, 2022. Paycer filed a motion to suppress the statements he made during that interview, asserting he did not validly waive his *Miranda* rights and his statements were involuntary. After holding an evidentiary hearing, the district court denied Paycer's suppression motion. It concluded the agents did not use coercive practices to obtain Paycer's *Miranda* waiver or statements and the waiver and statements themselves were the product of Paycer's free and unconstrained choice. On appeal, Paycer challenges those rulings.

**1. Background**

**a. Factual Background**

The facts, viewed in the light most favorable to the government, are as follows. *See United States v. Salazar*, 609 F.3d 1059, 1063 (10th Cir. 2010) ("We review the district court's findings of fact on a motion to suppress for clear error, examining the evidence in the light most favorable to the prevailing party."). Paycer is not in good health. He has lost most of his hearing and relies on cochlear implants. He has poor eyesight and difficulty seeing without glasses. He has chronic Stage 4 kidney failure and takes various medications to treat his condition. He has dialysis three days each week.

Paycer was arrested by local officers on Monday, August 1, 2022. When arrested, he did not have his glasses. He was missing one cochlear implant and the other had a low charge. On the morning of August 2, 2022, Paycer was questioned by Berardicurti and Ma for roughly 45 minutes. Paycer was in custody overnight between his arrest and the interview. He testified he was unable to eat the food provided due to his health and dietary restrictions and was kept awake all night by the behavior of his cellmate.

At the beginning of the interview, Berardicurti informed Paycer he was in custody, read Paycer his *Miranda* rights, and asked Paycer to read the waiver of his rights. When Paycer indicated he could not see because he did not have his glasses, Berardicurti read Paycer the waiver and asked, "Are you wanting to talk to us?" Paycer replied he did want to talk to the agents because he "want[ed] to know what

14

this is about." Berardicurti asked Paycer to sign the waiver and Paycer did so. At times, Paycer did not hear the question being asked by the agents. The agents repeated the question and Paycer responded appropriately. At the end of the interview, when agents told Paycer he would be taken to Tulsa for his initial appearance, Paycer said, "I missed my dialysis today." Ma responded, "you'll get treatment, but you have to see the Judge first." Berardicurti added, "[s]o they're already aware of your medical conditions, which is why we got here a little bit late because we had to plan everything out so that we can get you to where you needed to go." At no point during the interview did Paycer tell the agents he did not feel well or, aside from his inability to hear well or read without his glasses, that his medical conditions were impacting him.

### b. Procedural Background

Paycer's suppression motion asserted a combination of factors, together, rendered his *Miranda* wavier unknowing, unintelligent, and involuntary. He identified his lack of glasses and hearing aids; inability to eat while in custody because of the lack of food consistent with his renal condition; inability to sleep the night before the interview because of the conduct of his cellmate; and his feeling of being "woozy and fuzzy" because he did not have dialysis for seventy-two hours. He asserted those factors, together with his lack of counsel during the interrogation and the failure of the agents to tell him the nature of the charges against him until late in the interrogation, rendered his statements involuntary. In response, the government noted Paycer did not assert any coercive activity on the part of the agents, but instead

simply relied on the existence of his own physical limitations. *Cf. Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). The government also noted that during the interrogation, Paycer was alert and responded appropriately to the agents' questions. Furthermore, except for his visual and hearing impairments, which the agents accommodated during the interrogation, Paycer did not inform Berardicurti or Ma he was suffering any disability from his hunger, lack of sleep, or need for dialysis. Finally, the government argued that no aspect of the recorded interrogation cast doubt on the knowing and intelligent nature of Paycer's waiver of *Miranda* rights.

The district court held an evidentiary hearing at which Paycer, Berardicurti, and Dr. Connie Wang testified. Wang, a nephrologist specializing in treating chronic kidney disease and dialysis patients, testified she reviewed Paycer's medical records. She indicated some patients that go too long without dialysis suffer cognitive impairment and such impairment could be exacerbated by lack of food and sleep. On cross-examination, Wang conceded symptoms are "very individualized" and she did not know Paycer's symptoms, if any, at the time of the interrogation. Berardicurti testified he and Ma conducted Paycer's interview in plain clothes without weapons visibly present. Paycer was able to speak "clearly" during the entirety of the interrogation, without "stumbling or fumbling of his words." Paycer sat throughout the interrogation without indicating any discomfort. Other than Paycer's diabetes, Berardicurti was not aware of any of Paycer's health problems and did not notice

16

anything that caused him to be concerned about Paycer's health. The agents accommodated Paycer's hearing and visual difficulties by reading to him the *Miranda* waiver before Paycer signed it and by repeating any questions when Paycer indicated he did not understand. Paycer testified about his many health conditions and asserted those conditions affected his ability to think. He noted that when he was arrested, officers caused him extreme pain by placing the handcuffs on his fistula.[4] Paycer did not sleep that night and did not eat that night or the next morning. When Berardicurti and Ma arrived to interview him, Paycer told them he did not get his dialysis that morning. The agents told him "they will take care of that later." Paycer testified he did not hear the *Miranda* warnings when Berardicurti read them to him and only signed the waiver form because he was told to do so. On cross-examination, however, Paycer conceded he "heard all of those [*Miranda*] rights," "understood those rights," "agreed to speak" to the agents, and "voluntarily answered all of their question that they posed" to him.

The district court issued a written order denying Paycer's motion to suppress. It concluded no aspect of the record cast doubt on the knowing, intelligent, and voluntary nature of Paycer's *Miranda* waiver or the voluntariness of his statements. The district court noted Paycer was an adult man with a GED who stated he could read, write, and understand the agents' questions. Although Berardicurti had to read

---

[4] Paycer testified a "fistula" is "the device they put in [your wrist]—it's a tube—going from your artery to your vein to make your vein bigger so they can do dialysis through your vein." R. Vol. 1 at 182.

the *Miranda* waiver form to him, Paycer acknowledged he understood his rights and signed the waiver. While signing the waiver, Paycer affirmatively indicated he wanted to speak to the agents. Paycer was held over a single evening before the interview and did not complain that he was suffering any ill effects from lack of food or sleep. The interview lasted forty-five minutes. The agents were polite, noncoercive, and accommodated Paycer's hearing difficulties. Although Paycer was not aware of the nature of the charges against him at the beginning of the interview, he was so notified during the interview. And, although he did not have counsel present, he was advised of that right and chose to waive it. He was also advised that any statement he made could be used against him. Finally, the district court found Paycer did not establish he was suffering from any cognitive issues during the interview and, even if he was, there was no evidence the agents took advantage of the assumed impairments.

### 2. Analysis

#### a. Standard of Review

This court reviews de novo whether (1) Paycer's statements under custodial interrogation were voluntary and (2) Paycer voluntarily, knowingly, and intelligently waived his *Miranda* rights. *United States v. Minjares-Alvarez*, 264 F.3d 980, 984 (10th Cir. 2001); *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008). We review the district court's underlying factual findings for clear error. *Minjares-Alvarez*, 264 F.3d at 983-84; *Burson*, 531 F.3d at 1256. "Factual findings are clearly erroneous when they are without support in the record or when, after reviewing all

the evidence, [this court is] left with the definite and firm conviction a mistake has been made." *United States v. Phillips*, 71 F.4th 817, 821-22 (10th Cir. 2023) (quotation omitted).

### b. Discussion

Paycer's arguments as to the voluntariness of his statements and voluntariness of his *Miranda* waiver overlap. Thus, those issues will be dealt with in tandem. *See United States v. Perez*, 127 F.4th 146, 171 (10th Cir. 2025) (holding that this court's analysis of the totality of the circumstances for a voluntary *Miranda* waiver "applies with equal force to our voluntary-confession analysis"). Likewise, Paycer's arguments as to the knowing and intelligent nature of his *Miranda* waiver overlap and are considered together. *See Burson*, 531 F.3d at 1256-57 ("In determining whether a waiver of rights was knowing and intelligent, we employ a totality of the circumstances approach. We examine the entire record to determine whether the defendant evidenced sufficient awareness and understanding for us to conclude his waiver of rights was knowingly and intelligently made." (citations omitted)).

### i. Voluntariness

To be admissible at trial, statements "must be made freely and voluntarily; [they] must not be extracted by threats in violation of due process or obtained by compulsion or inducement of any sort." *Griffin v. Strong*, 983 F.2d 1540, 1542 (10th Cir. 1993). To determine whether a defendant's statements are voluntary, this court considers "the totality of the circumstances, and no single factor is determinative." *United States v. Young*, 964 F.3d 938, 942 (10th Cir. 2020). Relevant factors include

19

"(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *United States v. Lopez*, 437 F.3d 1059, 1063-64 (10th Cir. 2006). "The central consideration in determining whether a [statement] has been coerced always involves this question: did the governmental conduct complained of bring about a confession not freely self-determined?" *Griffin*, 983 F.2d at 1543 (quotations omitted). This court focuses on whether the decision to speak is "the product of an essentially free and unconstrained choice by its maker." *Young*, 964 F.3d at 943 (quotation omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Connelly*, 479 U.S. at 167.

Paycer's challenge to the voluntariness of his statements to Berardicurti and Ma fails because of the lack of coercive police conduct. *See id.* Paycer asserts that at the time he made the relevant statements, "he was tired, hungry, thirsty, and in pain. He was experiencing the cognitive effects of 72 hours without dialysis, high blood pressure, deprivation of sleep, food and water . . . ." Appellant's Opening Br. at 44. These considerations are only relevant to the issue of voluntariness if Paycer shows the existence of coercive conduct on the part of Berardicurti or Ma. *See United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998) (holding that a defendant's "age, mental capacity, and personal idiosyncrasies are relevant only if this court first concludes that the officers' conduct was coercive"). To satisfy the requirement of coercion, Paycer asserts the agents leveraged his imminent need for dialysis to force

20

him to engage in the interrogation. This argument suffers from two equally important flaws. First, the district court concluded the officers did not know about Paycer's need for dialysis until the end of the interview. That finding, despite Paycer's arguments to the contrary, is not clearly erroneous. The agents could not threaten to withhold from Paycer something they did not know he needed. Second, even if the agents were aware of Paycer's need for dialysis during the interview, there is no hint in the record of the kind of quid pro quo alleged by Paycer on appeal.

The district court did not clearly err in concluding the agents were not aware of Paycer's imminent need for dialysis during the interview. Paycer testified he told the agents before the interview he did not get his scheduled dialysis that morning. On the other hand, Berardicurti testified that, other than Paycer's diabetes, he was not aware before the interview that Paycer had any health problems. The district court weighed the competing testimony and implicitly found Berardicurti more credible. *See United States v. Jordan*, 806 F.3d 1244, 1252 (10th Cir. 2015) ("We defer to a district court's credibility determinations when reviewing a district court's findings of fact under a clearly erroneous standard. A credibility determination commands even greater deference to the trial court's findings than do other findings of fact." (quotations and alteration omitted)).

Paycer asserts, however, that statements made by the agents at the end of the interview demonstrate the agents did know Paycer missed his dialysis treatment that morning. When, at the end of the interview, Paycer told the agents he missed his dialysis treatment that morning, Ma responded as follows: "You'll get treatment, but

21

you have to see the Judge first." Berardicurti followed up with the following: "Yeah. So they're already aware of your medical conditions, which is why we got here a little bit late because we had to plan everything out so that we can get you to where you needed to go." Paycer asserts these statements are nonsensical unless the agents knew Paycer needed dialysis. His assertion, however, is not convincing. Berardicurti made clear he learned during the interview that Paycer had diabetes. He also testified to the following: (1) Paycer was arrested by local officers and held at a local facility because the "marshal's office" would not take custody of individuals past a certain time in the day; (2) it was not his duty as case agent to arrange for Paycer's medical treatment and, instead, he would only send in relevant paperwork to the marshal's office; (3) he told the marshal's office the morning of the interview that Paycer had diabetes; and (4) the marshal's office would arrange for any medical care Paycer needed when it took custody of Paycer. Given this contextual backdrop, the district court did not clearly err in declining to interpret the agents' statements late in the interview as demonstrating the agents knew Paycer imminently needed dialysis during the interview.

Even if this court were to assume the agents knew Paycer had missed a dialysis treatment the morning of his interrogation, the record would still not support the conclusion agents conveyed to Paycer his treatment was contingent on his consent to being interrogated. Assuming the truth of Paycer's testimony, when he told the agents pre-interview that he missed his dialysis treatment that morning, the agents told him they would "take care of that later." They did not equivocate or make the

provision of care contingent on anything. And Paycer did not demand that he be immediately transported for treatment. Instead, at the beginning of the interview, after Berardicurti read him his *Miranda* rights from the waiver form, Paycer stated he wanted to talk to the agents because he wanted "to know what this is about." Likewise, Paycer testified at the evidentiary hearing on the suppression motion that he "voluntarily answered all of [the agents'] questions." Finally, Paycer's own testimony during the evidentiary hearing demonstrates that although he was anxious about getting his dialysis, he did not attribute to the agents any implied threat to hold his dialysis contingent on answering their questions. Paycer testified as follows:

> Paycer: I was very anxious. I was worried. Because I've seen it happen up there people come in that needed it—didn't do their dialysis on time and they died in the chair while they were getting dialysis.
>
> Counsel: Why didn't you refuse to speak until you got dialysis?
>
> Paycer: They said they were going to take care of me. I was in their custody so I believed them. They were the cops. They were the good guys.

The record, thus, does not support the view that the agents made dialysis contingent on answering their questions or that Paycer perceived that the agents had done so. Thus, there is nothing in the record to support the notion agents coerced Paycer's statement. That lack of coercion is the end of the road for Paycer's arguments his statements and *Miranda* waiver were not voluntary. *Connelly*, 479 U.S. at 167.

### ii. Knowing and Intelligent Waiver

To determine whether a *Miranda* waiver was knowing and intelligent, this court employs a totality-of-the-circumstances approach. *Burson*, 531 F.3d at 1256-57.

23

This court "examine[s] the entire record to determine whether the defendant evidenced sufficient awareness and understanding for us to conclude his waiver of rights was knowingly and intelligently made." *Id.* at 1257. A waiver is knowing and intelligent when the defendant acts "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quotation omitted). *Burson* explains that "a defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *Id.* at 1258. When the government adduces "evidence showing the defendant was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them, the defendant must point to facts sufficient to overcome that showing." *Id.* The mere fact the defendant was mentally impaired does not suffice to make this showing. *Id.* "The defendant must produce evidence showing his condition was such that it rose to the level of substantial impairment. Only then could we conclude the government has failed to prove the defendant possessed full awareness of both the nature of his rights and the consequences of waiving them." *Id.* (footnote omitted).

The government adduced plentiful evidence showing Paycer was "sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them." *Id.* In response, Paycer failed to point to facts sufficient to overcome the government's showing. *See id.* Paycer contends the combined effects of his pain; lack of sleep, food, and dialysis; and the absence of his glasses and fully effective hearing aids rendered his *Miranda* waiver unknowing and unintelligent. The record belies this

24

assertion. During the interview, Paycer indicated he was fifty-one years old; had a GED; and could read, write, and understand the agents. After Berardicurti read Paycer his *Miranda* rights and asked Paycer to sign the waiver if he wanted to speak with the agents, Paycer signed the waiver. During the hearing on the suppression motion, Paycer admitted he heard all the rights Berardicurti read to him and understood those rights. Paycer also conceded he willingly agreed to speak with the agents and voluntarily answered their questions. The recording of the interview, along with the transcript thereof, demonstrates Paycer responded appropriately to the questions asked during the interview and that when he did not hear or understand a question, he so indicated to the agents. For these reasons, and for those additional reasons set out above in concluding Paycer's statements during the interrogation were not involuntarily given, this court concludes Paycer was sufficiently aware of the nature of the rights he gave up, and the consequences thereof, in waiving his *Miranda* rights.

## C. Jury Instructions

Prior to trial, the government gave notice of its intent, pursuant to Federal Rule of Evidence 414, to introduce the testimony of IW, CM, and KM. Rule 414(a) provides as follows: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." The government asserted the evidence was admissible to prove Paycer's propensity to sexually abuse children. *See United States v. Sturm*, 673 F.3d 1274,

25

1287 (10th Cir. 2012) ("Rule 414 evidence may be considered for its bearing on any matter to which it is relevant, including the defendant's propensity to commit . . . child molestation offenses, and assessment of the probability or improbability that the defendant ha[s] been falsely or mistakenly accused of such an offense." (quotation omitted)). Over Paycer's objection, the district court concluded the government's Rule 414 evidence was admissible.

Paycer submitted proposed jury instructions. As to the Rule 414 evidence involving IW, CM, and KM, Paycer asked the district court to instruct the jury as follows: "You are about to hear evidence that the defendant may have previously committed another offense of child molestation. The defendant is not charged with this other offense. You may consider this evidence only if you unanimously find it is more likely true than not true that the defendant committed this uncharged offense." (the "Proposed Rule 414 Unanimity Instruction"). As support for the giving of this instruction, Paycer pointed to Eighth Circuit Criminal Pattern Jury Instruction 2.08A. The district court's preliminary proposed instructions did not include the Proposed Rule 414 Unanimity Instruction. At the formal instruction conference, Paycer again asked the district court to give the jury his Proposed Rule 414 Unanimity Instruction. The district court denied Paycer's request, noting "the Tenth Circuit simply has not adopted that approach." Instead, the district court gave the jury the following instruction:

> You have heard evidence that the defendant may have committed other offenses of child sexual abuse.

You may consider this evidence for its bearing on any matter to which it is relevant, including the defendant's disposition or propensity to commit the offense that is charged in . . . the Indictment. You may not convict the defendant of the crime charged in the Indictment in this case simply because he may have committed other unlawful acts. You may give this evidence such weight, if any, as you think it should receive.

As you consider this evidence, bear in mind that, at all times, the government has the burden of proving that the defendant committed each of the elements of the offense charged in the Indictment. Remember that the defendant is not on trial for any act, conduct, or offense not charged in the Indictment.

The government likewise submitted proposed jury instructions. Among those the government requested was the following instruction regarding child witnesses: "Under federal law, a child is presumed to be a competent witness. You should judge a child's testimony using the same standards and in the same way you would any other witness." (the "Child Competency Instruction"). As support for its proposed instruction, it identified 18 U.S.C. § 3509(c)(2), which states that "A child [witness] is presumed to be competent." Paycer objected at the formal Instruction conference when the district court indicated it would give the Child Competency instruction. He asserted there had been "no challenge to competency" and "the jury may confuse competency with credibility." The district court noted Paycer's objection, but concluded the Child Competency Instruction was an accurate statement of the law.

Paycer claims the district court erred when it gave the jury the Child Competency Instruction. As he did below, Paycer asserts the instruction likely caused the jury to confuse competency with credibility, causing it to presume SL, IW, CM, and KM were credible. Furthermore, for the first time on appeal, he contends the

27

second sentence of the instruction effectively directed the jurors to ignore his defense. In so arguing, Paycer notes his defense highlighted reasons for the jurors to view the testimony of child witnesses differently from the testimony of adult witnesses. In addition to challenging the district court's decision to give the Child Competency Instruction, Paycer asserts the district court erred as a matter of law when it refused to instruct the jury it must disregard IW's, CM's, and KM's testimony unless it unanimously found, by a preponderance of the evidence, that Paycer molested each child. For those reasons set out below, Paycer's assertions of error are not persuasive.

### 1. Standard of Review

This court ordinarily reviews "jury instructions de novo and view[s] them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Woodmore*, 127 F.4th 193, 209 (10th Cir. 2025) (quotation omitted). "In doing so, we consider whether the district court abused its discretion in shaping or phrasing a particular jury instruction and deciding to give or refuse a particular instruction." *Id.* (quotations and alteration omitted). This standard focuses on "whether the jury, considering the instructions as a whole, was misled." *Id.* at 209-10 (quotation omitted). In that regard, the district court "is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *Id.* at 210 (quotation omitted). "The instructions as a whole need not be

28

flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." *Id.* (quotation omitted). Importantly, however, this standard only applies when the challenge to the jury instructions raised on appeal was preserved in the district court. Unpreserved challenges to jury instructions are reviewed under the plain error standard. *See United States v. Visinaiz,* 428 F.3d 1300, 1308 (10th Cir. 2005).

### 2. Child Competency Instruction

#### a. Competency/Credibility

Paycer asserts the district court erred in giving the Child Competency Instruction because jurors likely understood it as requiring them to presume his accusers were credible. In support of this assertion, he claims the key word in the instruction's first sentence, "competent," has a legal meaning entirely different from its ordinary understanding by laypeople. Paycer notes that, as applied to a child witness, "competent" means to be able to "understand and answer simple questions," 18 U.S.C. § 3509(c)(8), and to be able to understand the difference between truth and falsehood, the consequences of falsehood, and what is required by the oath, *United States v. Allen J.*, 127 F.3d 1292, 1294-95 (10th Cir. 1997). Paycer contends, however, that when a juror is told a person is presumed to be a competent witness, by contrast, the juror likely applies the following asserted lay definition of the term: "'able to do something well.'" Appellant's Opening Br. at 22 (citing *Competent*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english /competent (last visited Aug. 18, 2025)). To round out his syllogism, Paycer asserts

that because the purpose of a witness's testimony is to guide the jury toward an accurate result, a witness is not "competent" in the lay sense unless that witness tells the truth. *See id.* (citing Fed. R. Evid. 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully.")).

The district court did not abuse its discretion in instructing the jury that children are presumed to be competent witnesses. The instruction is consistent with the law. 18 U.S.C. § 3509(c)(2); Fed. R. Evid. 601; *see Woodmore*, 127 F.4th at 210 (holding district courts have broad latitude in formulating instructions as long as they are correct statements of the law). Thus, the issue presented by Paycer on appeal boils down to the following: Did the instructions as a whole mislead the jury into thinking all child witnesses are credible? They did not.

As common dictionary definitions demonstrate, the terms credible and competent are understood as conveying very different meanings. No definition of "competent" in the Oxford English Dictionary ("OED") entails an aspect of credibility. *Competent*, Oxford English Dictionary (2d ed. 1989). Instead, each definition, specifically including the legal definition set out at entry six, emphasizes the term relates to having suitable, adequate, or sufficient qualifications for a particular purpose. *Id.*; *see also Competent*, Webster's Third New International Dictionary of the English Language, Unabridged (1993). Likewise, the OED definitions of "credible" all focus on aspects of honesty, trustworthiness, and accuracy." *Credible*, Oxford English Dictionary (2d ed. 1989); *see also Credible*, Webster's Third New International Dictionary of the English Language, Unabridged

30

(1993). Nor do thesauruses treat the terms as having overlapping meanings. *Compare* J.I Rodale, *Competent*, The Synonym Finder (1987) *and Competent*, Thesaurus.com, www.thesaurus.com/browse/competent (last visited Aug. 18, 2025) *with* J.I Rodale, *Credible*, The Synonym Finder (setting out synonyms of "credible") *and Credible*, Thesaurus.com, www.thesaurus.com/browse/credible (last visited Aug. 18, 2025). Paycer has identified no reason to think the jury deviated from these well-understood distinct meanings of the terms and, instead, decided to use them interchangeably.

This conclusion is verified when the sentence Paycer asks this court to view in isolation—the first sentence of the Child Competency Instruction—is read in the context of the jury instructions as a whole. *See Woodmore*, 127 F.4th at 209-10 (holding instructions "need not be flawless" as long as they, "as a whole," do not mislead the jury). Jury Instruction No. 6, the instruction immediately preceding the Child Competency Instruction, discusses the issue of "credibility" or "believability" at length.[5] Furthermore, the second sentence of the Child Competency Instruction

---

[5] The instruction, which is identical to Tenth Circuit Pattern Criminal Jury Instruction 1.08 (2025), reads as follows:

> I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

> You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses, including the defendant, who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I

specifically indicates the jurors "should judge a child's testimony using the same standards and in the same way you would any other witness." This sentence makes clear to the jury that the mere fact children have the ability to testify does not mean those children are necessarily telling the truth. Thus, there is no likelihood the jury interpreted the first sentence of the Child Competency Instruction as directing it to credit the testimony of the child witnesses. Paycer's challenge to the instruction on that ground fails.

### b. Alleged Direction to Ignore Evidence

Paycer asserts the second sentence of the Child Competency Instruction—indicating jurors should judge a child's testimony using the same standards and in the same way they would any other witness—effectively directed jurors to ignore his

---

suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he or she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

defense. According to Paycer, this is so because his defense highlighted reasons to view a child witness's testimony differently from an adult witness's testimony. In response, the government claims Paycer did not preserve this challenge below. It further asserts that because he did not argue for plain-error relief in his opening brief, Paycer has waived the issue. *See United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir. 2018). In any event, the government contends any error is not plain because this court approved a functionally indistinguishable instruction in *United States v. Pacheco*, 154 F.3d 1236, 1239 (10th Cir. 1998). In reply, Paycer argues he preserved this challenge to the Child Credibility Instruction because he objected to the entire instruction. Furthermore, as he did regarding the evidentiary objection discussed above, Paycer asserts this court must undertake plain error review even if we conclude the issue is not preserved. *See supra* III.A.2 (discussing Paycer's faulty reliance on this court's decision in *Yurek*). Finally, Paycer claims, assuming the issue is unpreserved, the district court plainly erred in instructing the jury to utilize the same considerations in judging the credibility of child and adult witnesses.

This challenge to the Child Credibility Instruction is unpreserved. It matters not that Paycer objected to the entirety of the instruction in the district court. What matters is whether Paycer's objection was "sufficiently specific to provide the district court an opportunity to correct its action in the first instance." *Holloway*, 826 F.3d at 1251; *Hubbard*, 603 F.2d at 142. The only bases stated in Paycer's district court objection to the Child Credibility Instruction was that there had been "no challenge to competency" and "the jury may confuse competency with credibility." That issue is

resolved above. At no point did he provide the district court even a hint the instruction was at odds with the defense theory that jurors should use different standards to judge the credibility of the child and adult witnesses in sex abuse cases generally or this case in particular. Nor is Paycer correct in asserting any sort of district court challenge to a jury instruction preserves for appeal all possible challenges to that same instruction. Such an approach is anathema to the purposes undergirding preservation requirements and plain error review. *See Frost*, 684 F.3d at 971-72 ("The purpose of plain error review is to instill in litigators the importance of preparing adequately before appearing in the trial court and, as necessary, clarifying issues to that court. Timely, adequate objections allow the trial court to rule in the first instance and, if necessary, correct itself without spawning an appeal." (quotation omitted)).

The question then becomes whether this court should undertake plain error review given Paycer's failure to seek relief under that standard in his opening brief. *See supra* III.A.2 (noting, pursuant to *Leffler*, 942 F.3d at 1198, this court's discretion to conduct plain error review despite an appellant's failure to argue for an entitlement to such relief in an opening brief). This court would be well within its discretion in deeming the issue waived. Paycer's opening-brief assertion that he preserved his challenge to the second sentence of the Child Credibility Instruction by objecting to the whole instruction is not colorable given this court's binding precedents. This renders his corollary assertion that he is entitled to abuse-of-discretion review equally lacking in weight. Nevertheless, because it is patent that the

district court did not commit a plain error in instructing the jury as to how it should assess the credibility of child witnesses, this court resolves this issue by undertaking plain error review.

Paycer has not demonstrated the district court clearly or obviously abused its discretion in including the second sentence in the Child Competency Instruction. *See Pacheco*, 154 F.3d at 1239 ("[A] district court has the discretion to determine in a particular case whether the jury should be specially instructed regarding the credibility of a child witness and, if so, the nature of that instruction."); *Lopez*, 131 F.4th at 1122 ("An error is *plain* if it is so clear or obvious that it could not be subject to any reasonable dispute." (quotation omitted)). To begin, Paycer has not lodged any objection to Jury Instruction No. 6. *See supra* n.5 (quoting the entirety of Jury Instruction No. 6). That is not surprising since Jury Instruction No. 6 is consistent with this court's Circuit Pattern Criminal Jury Instruction 1.08 and functionally indistinguishable from the instruction this court approved in *Pacheco*, 154 F.3d at 1239. Indeed, the instruction approved in *Pacheco*, also a case involving allegations of child sex abuse, applied to "all of the witnesses who testified . . ., including the child witness." *Pacheco*, 154 F.3d at 1239. Paycer has not identified any aspect of Jury Instruction No. 6 limiting the jurors' responsibility to consider any evidence of dishonesty of his child accusers developed at trial. This is important because when the jury instructions are considered as a whole, it is neither clear nor obvious the second sentence of the Child Competency Instruction did anything other than direct

35

the jury to apply the standard in Jury Instruction No. 6 to both child and adult witnesses.

In sum, (1) Paycer did not object to Jury Instruction No. 6 and did not identify any aspect of the instruction that could reasonably be read as requiring the jury to disregard his evidence the child witnesses' allegations of abuse were not credible; (2) the second sentence of the Child Competency Instruction, when considered in the context of the entirety of the jury instructions, does no more than direct the jury to apply Jury Instruction No 6 to both child and adult witness; and (3) Jury Instruction No. 6 is functionally equivalent to the instruction this court approved in *Pacheco*, a case arising in an analogous fact situation. Thus, Paycer has not demonstrated the district court plainly erred when it instructed the jury to "judge a child's testimony using the same standards and in the same way you would any other witness."

### c. Rule 414 Evidence Unanimity Instruction

Paycer asserts the district court erred when it refused to instruct the jury that, unless it unanimously found, by a preponderance, he molested IW, CM, and KM, individual jurors were obligated to disregard that evidence in deciding whether he molested SL. He argues such an instruction is compelled by the Supreme Court's decision in *Huddleston v. United States*, 485 U.S. 681 (1988), this court's decision in *United States v. Platero*, 72 F.3d 806 (10th Cir. 1995), and by Fed. R. Evid. 104(b).[6]

---

[6] Relevant portions of Rule 104 provide as follows:

   **(a) In General.** The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is

Although Paycer's arguments are not without weight, this court is ultimately not convinced. We do not read *Huddleston* or *Platero* as offering guidance on the asserted need for jury unanimity in the context of Rule 104(b) conditional relevance. Despite the fact Rule 104(b) has existed in its current form for more than fifty years, Paycer has not identified a single case that has examined this issue in any detail and held Rule 104(b) requires jury unanimity. Furthermore, the text of Rule 104(b) does not speak to the role of the jury, let alone require such unanimous findings. Instead, the jury's involvement is discussed exclusively in the Advisory Committee Notes, and, even then, only in the most limited fashion. Finally, the rule Paycer advocates would have an undeniably broad impact and would likely create significant complexity. This counsels strongly against the adoption of the requested unanimity rule.

Neither *Huddleston* nor *Platero* compels the giving of unanimity instructions in the Rule 104(b) context. *Huddleston* considered this question: Must a trial court "make a preliminary finding before 'similar act' and other Rule 404(b) evidence is submitted to the jury[?]" 485 U.S. at 685. Rule 404(b) protects against introduction

---

admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

**(b) Relevance That Depends on a Fact.** When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

Fed. R. Evid. 104(a)-(b).

of certain kinds of "extrinsic act evidence when that evidence is offered solely to prove character." *Id.* at 687.[7] The defendant in *Huddleston* argued that because "evidence of similar acts has a grave potential for causing improper prejudice," "the jury ought not to be exposed to similar act evidence until the trial court has heard the evidence and made a determination under [Rule 104(a)] that [a] defendant committed the similar act." *Id.* at 686, 686-87. The Court rejected this position as "inconsistent with the structure of the Rules of Evidence and with the plain language of Rule 404(b)." *Id.* at 687. It noted relevant evidence was broadly admissible unless the Rules of Evidence provide otherwise. *Id.* The Court made clear this rule applied with equal force to Rule 404(b). *Id.* at 688-89. Indeed, *Huddleston* emphasized that Congress, in adopting its own version of Rule 404(b), "was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence."[8] *Id.* Thus,

---

[7] Rule 404(b) provides as follows:

**(b) Other Crimes, Wrongs, or Acts.**

**(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). It is worth reiterating that Rule 414, unlike Rule 404, allows for the admission of prior acts of child molestation to show a defendant acted in accordance with his character. *United States v. Sturm*, 673 F.3d 1274, 1287 (10th Cir. 2012).

[8] The same is true as to Rule 414. *See* David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent L. Rev. 15, 18-

the Court concluded "a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence is not called for under Rule 104(a)." *Id.* at 689.

Instead, *Huddleston* concluded questions of relevancy implicated by Rules like Rule 404(b)—i.e., evidence of prior bad acts bearing on a charged crime are only relevant if the defendant committed the prior bad acts—are addressed under Rule 104(b). *Id.* The Court then described the part a district court plays in the process mandated by Rule 104(b):

> In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence. The trial court has traditionally exercised the broadest sort of discretion in controlling the order of proof at trial, and we see nothing in the Rules of Evidence that would change this practice. Often the trial court may decide to allow the proponent to introduce evidence concerning a similar act, and at a later point in the trial assess whether sufficient evidence has been offered to permit the jury to make the requisite finding. If the proponent has failed to meet this minimal standard of proof, the trial court must instruct the jury to disregard the evidence.

> We emphasize that in assessing the sufficiency of the evidence under Rule 104(b), the trial court must consider all evidence presented to the jury. Individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.

---

19 (1994); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 153-54 (3d Cir. 2002) (discussing Karp's role in drafting Rule 414 and noting the principal Congressional sponsors of the Rule declared Karp's *Propensity and Probability* "was to serve as an 'authoritative' part of the Rules' legislative history").

*Huddleston*, 485 U.S. at 690-91 (citations, alteration, footnote, and quotation omitted). *Huddleston* does nothing more than hold that, in the exercise of its Rule 104(b) screening function, a district court must submit to the jury conditionally relevant evidence if the jury could reasonably find, by a preponderance, the existence of the necessary condition. *See id*. *Huddleston* does not mandate that the district court instruct the jurors to disregard the evidence if any one juror does not make such a finding.

Nor does *Platero* mandate the giving of Rule 104(b) unanimity instructions. *Platero* involved a conviction for sexual assault in violation of 18 U.S.C. § 2241(a). 72 F.3d at 808. At trial, Platero sought to introduce Fed. R. Evid. 412(b)(1) evidence of the victim's past sexual behavior.[9] *Id.* The district court unilaterally determined Platero's evidence was not credible and, therefore, refused to let it go to the jury. *Id.* at 809-10. *Platero* held that preventing the defendant from presenting such evidence in his defense would violate his Sixth Amendment right to confront his accuser for those reasons set out by the Supreme Court in *Olden v. Kentucky*, 488 U.S. 227, 232 (1988). 72 F.3d at 814-15; *see also id.* at 814 (holding that when a district court "proceeds to decide the preliminary relevancy-conditioned-on-fact issue against the proponent where the jury *could* reasonably find the fact to exist, the judge has violated the proponent's right to a jury trial"). *Platero* did note that judicial

---

[9] Rule 412 is "the federal version of a 'rape shield law.'" *Richmond v. Embry*, 122 F.3d 866, 875 (10th Cir. 1997).

40

factfinding as to the existence of a condition implicated the Supreme Court's decision

in *Huddleston*, which assigned to the district court only a narrow screening function,

obligating the court to submit the relevant evidence to the jury if there existed any

legitimate fact dispute as to the satisfaction of a condition precedent. *Id.* at 813-15.

Ultimately, *Platero* concluded that because a reasonable jury could find by a

preponderance the victim engaged in the relevant prior sexual behavior, the district

court denied the defendant a fair trial when it took the issue away from the jury. *Id.* at

815-16. Given that conclusion, *Platero* ordered as follows:

> At the new trial, which we direct on remand, cross-examination of [the victim] must be permitted on her relationship with [the other individual], if a showing . . . is made that [the victim] had a romantic or sexual relationship with [the other individual]. And if a showing is made so that the jury could reasonably find such a relationship existed between [the victim] and [the other individual] at the time of the alleged assault, the jury should be instructed that it should first determine whether there was a romantic or sexual relationship between [the victim] and [the other individual] at the time of the alleged assault; that if it finds no such relationship, it should disregard the cross-examination of [the victim] on that subject; otherwise the jury may consider that cross-examination and other evidence of the relationship between [the other individual] and [the victim] in determining Platero's innocence or guilt.

*Id.* at 815-16.

Paycer's uncritical assertion *Platero* establishes a rule of unanimity in all cases

implicating Rule 104(b) cannot be squared with the reasoning and result of *Platero*.

Unanimity is nowhere mentioned, let alone discussed, in the opinion. But even

assuming *Platero* could support a requirement of jury unanimity under Rule 412, that

result flows from the nature of the error at issue, i.e., a violation of Paycer's Sixth

Amendment rights to a jury trial and to confront his accuser. *Id.* at 815-16. Rule 412,

41

at issue in *Platero*, is wildly different from other federal evidentiary rules that implicate conditional relevance. Rule 412 precludes a defendant from adducing certain kinds of evidence as to an alleged victim's sexual history, but specifically makes that limitation contingent on consistency with the defendant's constitutional rights. Fed. R. Evid. 412(b)(1)(c). Rules 404(b)(2), 413, 414, and 415 are rules of admissibility. David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent L. Rev. 15, 19 (1994) ("[T]he effect of [Rules 413-15] is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission."). Paycer has not argued the constitutional implications of Rule 412 at issue in *Platero* apply in any way to Rule 414. To be clear, *Platero* did not identify and rectify a simple Rule 104(b) error. It identified and rectified a violation of Platero's constitutional rights. Thus, *Platero* does not hold that a jury must be instructed to find unanimously the existence of a Rule 104(b) condition precedent before the jury can consider Rule 414 other-crimes evidence.

Paycer also relies on Eighth Circuit Pattern Criminal Jury Instruction No. 2.08A, which requires a unanimity instruction in the Rule 414 context. There is, however, no attempt in the "Notes on Use" to that pattern instruction to explain the basis for the Eight Circuit's unanimity requirement.[10] And, importantly, it appears to

---

[10] In a Fed. R. App. P. 28(j) letter to this court, Paycer noted that in a recent decision issued by this court, both the defendant and government asked the district

be the only circuit with such a pattern instruction. *See* 21 Wright & Miller's Federal Practice and Procedure § 5054.2 (2d ed. 2025) ("But if the purveyors of pattern jury instructions know [what] they are doing, we might infer that federal courts follow the advice not to instruct the jury on redetermining 104(b) preliminary facts; none that we have inspected offer any instruction for this purpose."); *see also* Ninth Circuit Pattern Criminal Jury Instruction 2.11 ("You are about to hear evidence that the defendant [may have committed] [was convicted of] a similar offense of [sexual assault] [child molestation]. You may use this evidence to decide whether the defendant committed the act charged in the indictment. You may not convict the defendant simply because he [may have committed] [was convicted of] other unlawful acts. You may give this evidence such weight as you think it should receive or no weight." (bracketed material in original)). Nor has the issue been widely addressed in the federal courts. *See* 1 Mark Brodin et al., *Weinstein's Federal Evidence* § 104.30[1] (2d ed. 2020).

Because the caselaw presented by Paycer is not helpful in resolving the question of jury unanimity, this court is left with the text of Rule 104(b). The relevant portion of the rule simply provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a

---

court to instruct the jury consistently with the Eighth Circuit's pattern instruction 2.08. *See United States v. Harjo*, 122 F.4th 1240, 1245 (10th Cir. 2024). Yet, as Paycer recognizes, neither the propriety nor necessity of giving such an instruction was at issue in *Harjo* because it was "jointly" requested by the parties. *Id.* Thus, *Harjo* has no bearing on the outcome of this appeal.

finding that the fact does exist." Fed. R. Evid. 104(b). There is no indication in this text that the jury plays any part in this screening process, let alone a highly formalized role. [11] Instead, in asserting the jury must ultimately make a unanimous finding as to the existence of the condition, Paycer relies on the Advisory Committee Notes. In particular, the Note to §104(b) provides as follows:

> If preliminary questions of conditional relevancy were determined solely by the judge, . . . the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries. Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not [sic] established, the issue is for them. If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.

Paycer appears to imply that because all federal jury findings must be unanimous *and* because the Advisory Committee Notes indicate the existence of a Rule 104(b) condition precedent is for the jury, federal jurors must unanimously find the existence of a Rule 104(b) condition precedent before they can consider Rule 104(b) evidence. In this fashion, Paycer asks this court to utilize something akin to legislative history to read into the text of Rule 104(b) a rigid jury-unanimity

---

[11] Paycer erroneously relies on § 403 of the of the California Evidence Code. The text of § 403(c) specifically requires submission of certain conditional relevancy questions to the jury. There is no such textual direction in Rule 104(b). Notably a pre-adoption version of Rule 104(b) contained such a textual mandate, but it was eliminated from the final version of the rule. *See* 1 John Wigmore, *Wigmore on Evidence* §14.1 n.13 (1983).

requirement that exists nowhere in the text of the rule. *See Stinson v. United States*, 508 U.S. 36, 43 (1993) (describing the "advisory committee notes to the various federal rules of procedure and evidence" as something akin to legislative history). The actual text of Rule 104(b), however, is directed to the *district court's* gatekeeping functions before allowing a party to present to the jury evidence which is only relevant upon proof of a condition precedent. *Huddleston*, 485 U.S. 687-92. Paycer has offered this court no textual hook for adopting a jury unanimity rule.

The unanimity rule Paycer asks this court to adopt would seriously complicate district court proceedings. A rule that a jury must unanimously find the existence of a condition before individual jurors can consider conditionally relevant evidence would extend well beyond Rule 104(b) itself. It would apply to Rule 602, governing the need for all witnesses to testify from personal knowledge, *see* Fed. R. Evid. 602 advisory committee's notes ("It will be observed that the rule is in fact a specialized application of the provisions of Rule 104(b) on conditional relevancy."); Rule 901, governing authentication or identification of evidence, *see* Fed. R. Evid. 901(a) advisory committee's notes to 1972 proposed rules ("This requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)."); and Rule 1008, governing admission of "other evidence of the content of a writing, recording, or photograph, *see* Fed. R. Evid. 1008 advisory committee's notes ("The decision is not one for uncontrolled discretion of the jury but is subject to the control exercised generally by the judge over jury determinations. See Rule 104(b).").

45

Furthermore, commentators have noted the very blurry nature of the line between evidence relevant under Rule 401 and evidence relevant under 104(b) only upon the finding of a condition precedent. *See, e.g.*, George Fisher, *Evidence* 36-37 (2d ed. 2008) ("In erecting a distinct standard to govern questions of conditional relevance, the rule-writers almost surely made a logical error. *Every* chain of inferences has potential missing links."). A savvy lawyer can potentially turn any question of Rule 401 relevance into a Rule 104(b) conditional question. *See id.*

Given the potential breadth of its application, it is not difficult to imagine the confusion Paycer's unanimity rule could spawn. If the jury were required to begin its deliberations by unanimously working though a list of what evidence jurors can consider in deciding whether the government has proven the elements of the charged crime, deliberations will become interminably complex and protracted. Attorneys would be incentivized to make every evidentiary issue a conditional one and always request a slew of unanimity instructions in the hope they can preclude all jurors from considering evidence of guilt by convincing a single juror a condition precedent is absent. Such an approach is most surely at odds with the Supreme Court's holding in *Richardson v. United States*, 526 U.S. 813, 817 (1999) (holding "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element").

None of the authorities identified by Paycer meaningfully support his proposed rule of jury unanimity. Nor does such a rule find support in the text of Rule 104(b). Furthermore, the potential consequences of adopting such a rule are dramatic. As a

46

consequence, it is not difficult for this court to conclude the district court did not err in denying Paycer's request for a jury unanimity instruction in the instant Rule 414 other-crimes context.

## D. Cumulative Error

Paycer contends that even if he is not entitled to relief on his individual claims of error, the cumulative effect of those errors entitles him to a new trial. Because Paycer did not demonstrate the existence of any error, preserved or plain, we need not consider the issue of cumulative error. A special process applies "[w]hen an appellant presents a mix of preserved and unpreserved errors on appeal." *United States v. Kepler*, 74 F.4th 1292, 1320 (10th Cir. 2023). For that process to apply, however, Paycer must identify at least two individually harmless errors or plain errors. *Id.* at 1320-21; *see also id.* ("First, the preserved errors should be considered as a group under harmless-error review." (quotation omitted)); *id.* ("If we dispose of an unpreserved error on the second prong of plain error review—that is, we decide the error was not 'plain'—then it does not factor into the cumulative error analysis."). As set out above, Paycer has not identified any preserved errors or unpreserved plain errors. Thus, there are no errors to cumulate.

## IV. CONCLUSION

The judgment of conviction entered by the United States District Court for the Northern District of Oklahoma is hereby **AFFIRMED**.

47